M. JAY AND SHEILA F. STEEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Steen v. Commissioner
Docket No. 41643-86
United States Tax Court
T.C. Memo 1989-542; 1989 Tax Ct. Memo LEXIS 542; 58 T.C.M. (CCH) 318; T.C.M. (RIA) 89542; September 28, 1989
Elmer M. Jones, for the petitioners. Thomas C. Morrison, for the respondent. BUCKLEY
MEMORANDUM FINDINGS OF FACT AND OPINION BUCKLEY, Special Trial Judge: This case *543 was assigned pursuant to section 7443A(b) and Rules 180, 181 and 182. [1]
Respondent determined deficiencies in petitioners' joint Federal income taxes in the amounts of $ 6,241 and $ 4,720 for 1982 and 1983, respectively. The basic issue for decision is whether Jay Steen (hereafter "petitioner") made alimony payments pursuant to a dissolution decree deductible under section 215(a) for the years in issue. [2] Subsidiary issues are whether petitioners are collaterally estopped from relitigating issues found by the state court in rulings subsequent to the original dissolution decree and whether this Court is bound to give full faith and credit to the rulings of the state court. Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners *544 resided in West Liberty, Iowa, when they filed their petition. The key to this controversy lies in the interpretation of a 1978 dissolution decree and subsequent decrees in 1980 and 1984 interpreting the 1978 decision. Petitioner commenced a dissolution of marriage action in the Iowa District Court for Muscatine County. Petitioner and his former wife, now named Janet Rauch, entered into a Stipulation of Agreement filed with the District Court in which they agreed to child custody and support, alimony, and various other items. Additionally, the parties agreed to a division of property. On August 29, 1978, the Iowa Court made its Findings of Fact and Entered its Judgment and Decree incorporating the Stipulation of Settlement of the parties. The decree provided as follows: 3. It is further ordered that Petitioner shall pay as child support the sum of Seven Hundred Fifty Dollars ($ 750.00) per month for the use of Respondent in the care, support and education of the parties' minor child. Said support payment shall commence on the first day of the first month after entry of the Decree herein and shall continue to be paid on the first day of each month thereafter until such time *545 as said child attains the age of eighteen (18) years or graduates from high school, whichever is later, or marries, dies or becomes self-supporting, whichever event first occurs. Said monthly payments shall be made to the Clerk of this Court and judgment is entered in favor of Respondent for all sums in accordance with this Decree. 4. It is further ordered that Petitioner shall pay to the Clerk of the Court as alimony the sum of Two Hundred Fifty Dollars ($ 250.00) per month for the use, benefit and support of the Respondent. Said alimony payments shall commence on the first day of the first month after entry of the Decree herein and shall continue on the first day of each month thereafter until Petitioner is no longer obligated to pay child support in accordance with paragraph 3 above on July 1, 1982, or until such time as Petitioner is no longer obligated to pay child support, he shall pay to the Clerk of this Court the sum of One Thousand Dollars ($ 1,000.00) per month as alimony for the use, benefit and support of Respondent; said support to be paid in quarterly installments. It is further ordered that at such time as Respondent shall qualify for Social Security benefits *546 that said alimony payments shall be reduced by the amount of such benefits received. It is furthere [sic] ordered that Petitioner's obligation hereunder shall cease upon the death of Respondent and said alimony payments shall be a lien upon the estate of the Petitioner. All of the real property went to petitioner, Ms. Rauch received $ 25,000 as property settlement and household goods and automobiles were divided between the parties. Further, petitioner was to transfer ownership to Ms. Rauch of a life insurance policy of $ 100,000, make her the primary beneficiary and continue to make premium payments thereunder. Prior to his first marriage, petitioner inherited a farm from his parents and built a home on this farm. Petitioner and his former wife, Janet, married in 1955. Petitioner is a farmer. While petitioner and his former wife were married, he farmed 256 acres on which he grew grain; he also purchased cattle and fed them for market. He employed a buyer to purchase the cattle and several hired hands for farming activities. Petitioner also owned a one-third interest in a 135 acre farm nearby in which each of his two brothers held a one-third interest. Since 1973 petitioner *547 was a director of a West Liberty bank in which he also held a financial interest. Specifically, he held a one-eleventh interest in the holding company that owned the bank. For 6 months after their marriage, Janet Rauch worked at the nearby University of Iowa Hospital as a registered nurse. Thereafter, she devoted her time to caring for her husband and raising their family. During the course of their marriage, they had three daughters, born in 1956, 1960, and 1963. Petitioner and his former wife were married for 23 years. During 1977 petitioner requested and Janet Rauch agreed to a dissolution of marriage, both recognizing that their marriage was over. Petitioner and Janet Rauch, in effect, arrived at their own financial arrangement, even though both of them were represented by counsel. The property valuations were based upon petitioner's estimates and neither party employed an independent appraiser. Petitioner held sole title to the majority of the assets: the homestead valued at $ 256,000, a one-third interest in the 135 acre farm valued at $ 50,000, an interest in the West Liberty bank holding company valued at $ 55,000, an automobile valued at $ 2,000, and cash and bank *548 accounts valued at $ 1,000. Janet Rauch held sole title to one automobile valued at $ 6,000. Both petitioner and Janet Rauch held title to household goods valued at $ 10,000. Pursuant to petitioner's personal estimates, the valuation of petitioner's and Janet Rauch's assets equaled $ 380,000. Liabilities acquired during the marriage totaled $ 69,187.50 which were held solely in petitioner's name. The Iowa trial court entered findings of fact, judgment and decree (hereafter the 1978 decree) approving the stipulation of agreement of the parties. However, the case was heard as a default matter since all matters had been fully stipulated by the parties. Petitioner commenced making the required payments under the dissolution decree. After the dissolution, Janet Rauch rented an apartment in West Liberty and worked in Muscatine. When she decided to move to Muscatine in order to eliminate commuting time, their daughter Sandra Lea wished to attend high school in West Liberty and not go to Muscatine. Consequently, she moved in with her father. As a result of this change, as of June 1980, petitioner stopped paying Janet Rauch the $ 750 per month listed in the 1978 decree as child *549 support. Janet M. Rauch filed a Motion for Contempt Citation and petitioner responded with an Application to Modify Decree. In the ruling on Motion for Contempt Citation and Application to Modify Decree (hereafter "1980 court ruling") the trial court, although not holding petitioner in contempt, held that he was still obligated to pay Janet Rauch $ 1,000 per month. In so holding, the court stated as follows: It is abundantly clear, both from the Stipulation and from the record made at the joint hearing, that the parties intended to make a property division by the terms set out herein included in the Stipulation and Decree. * * * The advice of counsel was directed toward a division of the $ 1,000 monthly payments in such a manner as to benefit the respondent income taxwise. Some negotiations transpired between the parties in relation to this, and the $ 250-$ 750 division was agreed upon. While $ 250 of the amount was designated alimony and $ 750 designated child support, it's abundantly clear to the Court that these were fictitious representations. This was clearly a combination property settlement and support situation, even though denominated alimony and support. * * * *550 From the foregoing recitation of facts, it is obvious that the payments, being in the way of property division, as such, they are not subject to modification. See Kraft v. Kraft, 187 NW 449. The Court at the same time provided that petitioner was to have permanent custody of Sandra Lea. Next, Janet Rauch remarried a person of some wealth. Petitioner thereupon in 1984 filed an Application to Modify Dissolution Decree. This application requested termination of alimony payments to Janet Rauch because of changed circumstances: (1) petitioner's capacity to pay substantially decreased due to a farm economy drop and (2) his former wife remarried an independently wealthy man. The trial court denied the Application to Modify Dissolution Decree (hereafter "1984 court ruling"). Referring to its 1980 ruling, the trial court noted: Nowhere did the Court specifically say this is, in fact, a property settlement and not support or alimony; but that was the intent of the Court at the time. Unfortunately, the Court felt that use of such blunt language might create tax problems unnecessarily for the parties, and so such clear terms were not used. The trial court went on *551 to state, this time unequivocally, "Clearly what this was was a property settlement." Petitioner did not file for review of either the 1980 or the 1984 ruling. Respondent disallowed the deduction as alimony of $ 14,678 in 1982 and the same amount for 1983. These amounts consisted of the $ 1,000 per month payments and the premiums on the life insurance policy on his life (now owned by Janet Rauch) which petitioner was obliged to pay under the terms of the 1978 decree. Petitioner contends that the original dissolution decree in 1978 properly set forth and valued the parties' assets. Further, he contends that the original divorce decree properly characterized the property settlement, the alimony payments and the child support payments pursuant to the parties' intent and Iowa dissolution law. He argues that Janet Rauch received at least one-half of the net marital assets pursuant to the $ 25,000 property settlement. Therefore he argues that the monthly $ 1,000 payments and semi-annual insurance premium payments constituted alimony. Respondent contends that petitioner's payments constitute a part of the division of property and are not alimony. Respondent's fundamental argument *552 is that petitioner did not prove that the payments satisfied a spousal support obligation, rather than a property settlement obligation. Deductibility Under Section 215
If the payments constitute property settlement payments, then the amounts are not deductible to petitioner and not includible in Janet Rauch's income. Yoakum v. Commissioner, 82 T.C. 128, 134 (1984). Property settlement payments are capital in nature. Consequently, property settlement payments are not subject to section 71. Yoakum v. Commissioner, supra at 134, citing Thompson v. Commissioner, 50 T.C. 522 (1968) and Price v. Commissioner, 49 T.C. 676 (1968). On the other hand, section 215 allowed the husband to deduct payments includable in the wife's income under section 71. Section 71 [3] provided that the wife must include in her income periodic payments discharging "a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree." *553 The payments made by petitioner in the years in question were made pursuant to the 1978 decree as interpreted by the 1980 ruling. They consist in each year of $ 1,000 per month paid to Janet Rauch and the balance of $ 2,678 in payments each year to Janet Rauch for premiums due on the life insurance policy owned by Janet Rauch on petitioner's life. We first consider whether we must also review the 1984 decree in this regard. For it to be applicable, we must consider whether it constitutes a true nunc pro tunc order which retroactively applies to correct a mistake. If so, we would recognize the 1984 ruling for Federal tax purposes. Gordon v. Commissioner, 70 T.C. 525, 530 (1978); Newman v. Commissioner, 68 T.C. 494, 501 (1977). Retroactive judicial determinations cannot for Federal income tax purposes change the rights of the parties or the legal status of the payments. Gordon v. Commissioner, supra at 530; Daine v. Commissioner, 9 T.C. 47, 52 (1947), affd. 168 F.2d 449 (2d Cir. 1948). Thus, where a State court enters an order purporting to relate back to a prior date, but which actually reflects *554 an intention or design which originated subsequent to that date, such orders will not be given effect for Federal tax purposes. Newman v. Commissioner,supra at 501. However, where the retroactive order was entered to correct a mistake in a divorce decree, such an order, a true nunc pro tunc order, will be recognized for Federal tax purposes. Gordon v. Commissioner,supra at 530; Newman v. Commissioner, supra at 501. We look to Iowa law. Commissioner v. Estate of Bosch, 387 U.S. 456 (1967). In Iowa, a court has the jurisdiction, both under common law and statute, to correct its own judgments by nunc pro tunc order. McVay v. Kenneth E. Montz Implement Co., 287 N.W. 2d 149, 150 (Iowa 1980). A nunc pro tunc order makes the record show now what was actually done then. Feddersen v. Feddersen, 271 N.W. 2d 717, 718 (Iowa 1978). Procedural due process requires notice and a hearing before a nunc pro tunc order may stand. McVay v. Kenneth E. Montz Implement Co.,supra at 150. Substantive due process requires that after entry and signing of the decree, the *555 judge may only exercise its nunc pro tunc power to correct evident mistakes or to explicitly confirm the original decree. Feddersen v. Feddersen,supra at 719. A nunc pro tunc order can not correct judicial thinking, a judicial conclusion or mistake of law. Headley v. Headley, 172 N.W. 2d 104, 108 (Iowa 1969). An evident mistake exists where (1) a literal reading of the judgment produces a result so unusual as to be startling or (2) the mistake was easily made and easily overlooked such as an error in name or date. McVay v. Kenneth E. Montz Implement Co., supra at 151. The passage of time is also relevant. If time passes, the mistake must be manifestly evident before a nunc pro tunc entry is proper. McVay v. Kenneth E. Montz Implement Co., supra at 151. We find that the 1984 ruling did not constitute a nunc pro tunc order on two grounds. First, without notice or hearing on this specific issue, the trial court recharacterized the alimony payments as property settlement payments. Second, the trial court ruled on the motion and applications in 1984, 6 years after entry and signing of the original decree. *556 Thus, the trial court may only exercise its nunc pro tunc power to correct an evident mistake or to explicitly confirm the original divorce decree. The trial court did not correct an evident mistake as defined by the Iowa Supreme Court. Instead, it entered a ruling purporting to correct judicial thinking and judicial conclusions. Thus, we look only to the original decree and the 1980 ruling. The 1978 dissolution decree was not reached in a contested hearing. The parties negotiated its terms, made their own characterizations of the payments and divisions of property, and presented their Stipulation to the Iowa court which accepted it without change. In such a circumstance, we independently examine the facts and circumstances surrounding the original decree to determine the parties' intent. Boucher v. Commissioner, 710 F.2d 507 (9th Cir. 1983), affg. a Memorandum Opinion of this Court. The language used in the 1980 ruling by the Iowa court purposely does not serve to represent the intent of the parties, or even that of the Iowa court which in the words of its 1984 ruling "felt that use of such blunt language might create tax problems unnecessarily for the parties, *557 and so such clear terms were not used." We have on many occasions set forth factors which indicate payments are more like a property settlement than the discharge of a legal obligation of support incurred because of the marital or family relationship. Thus, in Beard v. Commissioner, 77 T.C. 1275, 1284-1285 (1981), we stated as follows: (1) That the parties in their agreement (or the court in its decree) intended the payments to effect a division of their assets, (2) that the recipient surrendered valuable property rights in exchange for the payments, (3) that the payments are fixed in amount and not subject to contingencies, such as the death or remarriage of the recipient, (4) that the payments are secured, (5) that the amount of the payments plus the other property awarded to the recipient equals approximately one- half of the property accumulated by the parties during marriage, (6) that the need of the recipient was not taken into consideration in determining the amount of the payments, (7) that a separate provision for support was provided elsewhere in the decree or agreement. Conversely, the absence of one or more of the above factors may tend to indicate *558 that the payments are more in the nature of a support allowance. [Citations omitted.] We begin our analysis with an examination of the State statutory and judicial authority governing the division of property in Iowa because State law defines property rights. We note that while State law defines property rights, Federal law determines the tax consequences which attend these defined rights. Sampson v. Commissioner, 81 T.C. 614, 618 (1983), affd. without published opinion 829 F.2d 39 (6th Cir. 1987), cert. denied U.S. (1988). The pertinent Iowa statutory provision in effect during the years in issue (Iowa Code Ann. tit. 28, sec. 598.17 (West 1979)) provided as follows: The Court shall, based upon competent and relevant evidence, in such decree provide for the division of the assets of the parties and reasonable support or maintenance of any dependent children or either spouse. During the years in issue, judicial guidelines, not statutory guidelines, governed the appropriate divisions of the parties' assets and the awards of alimony or support. Locke v. Locke, 246 N.W. 2d 246, 251 (Iowa 1976), citing Schantz v. Schantz, 163 N.W. 2d 398, 405 (Iowa 1968). *559 When considering alimony and property distributions, the Iowa courts followed the guidelines delineated in Schantz as modified in In re Marriage of Williams, 199 N.W. 2d 339 (Iowa 1972). In re Marriage of Williams, supra at 344, discarded fault concepts when considering alimony and property distributions. Those premarital factors are: (1) the social position and living standards of each party, (2) their respective ages, (3) their respective mental or physical condition, (4) what each sacrificed or contributed, financially or otherwise to the marriage, and (5) the training, education and abilities of each party. Postmarital factors constituted (1) the duration of the marriage, (2) the number of children, their respective ages, physical or mental conditions, and relative parental as opposed to financial needs, (3) net worth of property acquired, and contributions of each party thereto by labor or otherwise, (4) net worth and present income of each party, (5) present physical and mental health of each party, (6) earning capacity of each party, (7) life expectancy of each party, (8) any extraordinary sacrifice, devotion or care by either spouse *560 in furtherance of a happy marriage or in preservation of the marital relationship, (9) present standards of living and ability of one party to pay balanced against relative needs of the other, and (10) any other relevant factors which will aid in reaching a fair and equitable determination as to respective rights and obligations of the parties. Further, during the years in issue, the Iowa courts considered property inherited both before and during the marriage when effecting a property division of the parties' marital assets. In re Marriage of Moffatt, 279 N.W. 2d 15, 20 (Iowa 1979), citing In re Marriage of Beeh, 214 N.W. 2d 170, 175 (Iowa 1974) and cases cited therein. The Eighth Circuit Court of Appeals, to which an appeal of this case would lie, has held that the rights of a wife in Iowa constituted only inchoate rights in her husband's property. Wallace v. United States, 439 F.2d 757, 760 (8th Cir. 1971), cert. denied 404 U.S. 831 (1971). Thus, a wife's interest in marital property in Iowa constituted only a burden on her husband's property rather than creating part ownership. Wallace v. United States, supra at 760. *561 Consequently, the Iowa courts did not apply either a standard percentage or equal division test. Instead they utilized a reasonableness test to divide the marital assets: whether the division of the marital assets constituted an equitable and just award under the circumstances. Locke v. Locke, supra at 251. For the following reasons we find that petitioner's payments of $ 1,000 per month to Janet Rauch constituted property settlement payments. First, we find that the parties intended in their agreement and that the court intended in its decree to effect a division of their assets with the payments. The 1980 ruling appears to indicate such an intent. The mere labeling of the payments as alimony is not determinative. We note that the payments were not to terminate upon the death of petitioner, but were to be a lien upon his estate, a factor which goes to indicate a property settlement. On the other hand, the payments were to cease upon the former wife's death, and were to be reduced when she became qualified for social security payments. While both of these factors appear to be an indication of a support obligation, we believe that the payments represented *562 an annuity to the former wife in partial exchange of her property interests. Our opinion in this regard is buttressed by the fact that the payments the parties originally characterized as child support were to continue to be made to Janet Rauch after child support was no longer relevant because of the child's reaching majority. This fact too makes the payments appear to be more in the nature of an annuity to the former wife in return for her share of the marital property. If these payments were considered to be alimony, the only substantial settlement of property interests which Janet Rauch would have received consisted of $ 25,000 in cash and ownership in the $ 100,000 insurance policy on the life of petitioner together with the premium payments on it until it became paid-up in 1990. The petitioner, on the other hand, was to hold as his own all real estate and corporate assets. In connection with the original dissolution petition, petitioner valued his total assets at $ 380,000 and liabilities at $ 69,000. We do not believe that an Iowa court in a contested dissolution proceeding would have divided such substantial property in such an inequitable manner. Although petitioner *563 had inherited the farm, the Iowa courts consider inherited property when effectuating a division of the parties' marital assets. Further, in its 1980 ruling, the Iowa court stated that its intent had been to effect a property division and settlement with the monthly payments. Second, we find that Janet Rauch surrendered valuable property rights in exchange for the payments. As noted above, Janet Rauch was entitled to have the farm considered in the division of marital assets. Since petitioner was a farmer who could not maintain a livelihood without his farm, the division or sale of the farm would not have been advantageous to petitioner. Thus, Janet Rauch received payments in lieu of dividing or selling the land. Indeed, it is unclear that there were sufficient assets available to pay her outright for her property interests, so it may well have been that an annuity for her life was the most feasible property settlement for her. We also note that the payments were to the former wife for life and neither the agreement nor the decree stipulated that they terminated upon her remarriage. Although this is not determinative, since such termination can occur through operation of law *564 in a true alimony situation, it is but another indicia of a property settlement. We turn now to the premiums paid on the $ 100,000 face amount life insurance policy. We note that the policy was not utilized to secure petitioner's obligations to his former wife. Rather, outright ownership of it was transferred to her along with the petitioner's obligation to pay the premiums for approximately 12 years at which time it would become paid-up. The record does not disclose the value of this policy at the time of the dissolution proceeding. Nevertheless, it appears to represent but one additional aspect of the division of marital property between petitioner and his former wife. Because of our resolution of the substantive issue in this case, it is not necessary to examine respondent's subsidiary arguments concerning collateral estoppel and full faith and credit. For the reasons stated above, the payments in question are not deductible. Decision will be entered for the respondent. Footnotes
1. Section references are to the Internal Revenue Code of 1954, as amended, and in effect for the tax years at issue unless otherwise indicated. Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner requested an award of costs and attorney's fees in his petition. This request is premature. See sec. 7430.↩
3. Sec. 71 provided, in pertinent part, as follows: (a) GENERAL RULE.-- (1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE. --If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.↩