M. Jay STEEN and Sheila F.
Steen, Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE, Appellee.

No. 89–2908.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1990.

Decided Jan. 15, 1991.

Brian J. Helling, Burlington, Iowa, for
appellants.

Brian C. Griffin, Washington, D.C., for
appellee.

Before JOHN R. GIBSON, Circuit
Judge, HEANEY, Senior Circuit Judge,
and MAGNUSON,* District Judge.

JOHN R. GIBSON, Circuit Judge.

M. Jay Steen and Sheila F. Steen appeal

---

* The HONORABLE PAUL A. MAGNUSON, Unit-
ed States District Judge for the District of Minnesota, sitting by designation.

from a decision of the tax court [1] determining deficiencies in their joint federal income tax returns for the years 1982 and 1983. The deficiencies resulted because Jay and his present wife, Sheila, claimed alimony deductions for certain payments to Jay's former wife, Janet. The tax court determined that these payments were in the nature of a property settlement, not alimony, and thus were not deductible under 26 U.S.C. § 215 (1982).[2] We affirm the judgment of the tax court.

Jay and Janet Steen were divorced in 1978. At dissolution, the bulk of the couple's combined assets consisted of a farm which Jay inherited before marrying Janet. Jay wanted to retain full ownership of the farm after the divorce because farming is his principal source of income. Janet's primary concern was that Jay provide her a regular stream of income sufficient to support her for the rest of her life in a manner equal to that she enjoyed during the marriage. The two negotiated an agreement in which Jay agreed to pay Janet a $25,000 lump sum and $1000 per month for as long as she lived.

The agreement provided that the couple's youngest daughter, Sandra Lea, would live with Janet until age 18. The stipulation, which the Iowa district court adopted in its divorce decree, characterized the $1000 monthly payments as $750 child support and $250 alimony.[3] When Sandra Lea reached 18, or graduated from high school, the child support payments would end, and

Jay would increase Janet's alimony to $1000 per month. Jay retained the farm.

In June 1980, Janet moved from the Steen's hometown of West Liberty to Muscatine, Iowa. Sandra Lea did not wish to leave her high school, so she moved in with Jay. Jay then stopped paying Janet $750 per month in child support.

On June 25, 1980, Janet brought contempt proceedings against Jay to force him to continue paying her $1000 per month. Jay then sought to modify the original divorce decree to reflect the fact that he, and not Janet, was now supporting Sandra Lea.

The district court did not find Jay in contempt. The court did, however, hold that the $1000 monthly payments were actually a form of property settlement, and, as such, the court did not have jurisdiction to modify them based on changed circumstances as it might be able to modify alimony or child support payments. *In re Marriage of Steen*, No. D1470–578, slip op. at 4 (Iowa Dist.Ct. October 8, 1980). The court ordered Jay to continue paying the full $1000 per month. Jay did not appeal this ruling.

In 1984, Janet married a man of independent wealth, becoming Janet Rauch. Jay again sought modification of the divorce decree on the ground that his own financial situation was worsening while Janet's remarriage had significantly improved her financial security. The court dismissed Jay's application for modification, relying on and clarifying its 1980 finding that the

**1.** The Honorable Helen A. Buckley, Special Trial Judge in the United States Tax Court.

**2.** 26 U.S.C. § 215(a) (1982) (amended 1984) stated:

In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year.

26 U.S.C. § 71(a) (1982) required a divorced or separated wife to include in gross income all payments received from her husband in discharge of an obligation imposed on the husband under the divorce decree or a written instrument incident to such divorce or separation. Where, however, payments discharged an obligation to support minor children, section 71(b), or represented installment payments dis-

charging a property settlement, section 71(c)(1), such payments were not considered income to the wife under section 71 or deductible by the husband under section 215.

**3.** There is differing tax treatment of three distinct marriage dissolution consequences: child support, which is neither taxable income to the recipient nor deductible by the payor; alimony, which is taxable income to the recipient, but a deductible expense to the payor; and property settlement, which is merely an allocation of property already owned jointly by the couple, and produces no tax consequences to either party. *Yoakum v. Commissioner of Internal Revenue*, 82 T.C. 128, 134 (1984) ("[p]ayments which are part of a property settlement are capital in nature and, therefore, are not subject to the provisions of section 71").

language of the original dissolution agreement, while it used the words "alimony" and "child support," actually effected a property settlement between Jay and Janet. *In re Marriage of Steen*, No. D1470-578, slip op. at 1–2 (Iowa Dist.Ct. December 21, 1984). Once again, Jay did not appeal this ruling.

Despite the district court's two rulings that Jay's payments to Janet were part of a property settlement, Jay always, for tax purposes, deducted the payments as alimony. He claimed deductions for $250 per month alimony between 1978 and 1980, and for $1000.00 per month alimony after May, 1982.[4]

The IRS in 1985 discovered that in 1982 and 1983 Jay had claimed deductions for alimony payments while Janet did not include these payments as income on her 1982 and 1983 tax returns because she considered them to be part of a property settlement.[5] The IRS issued deficiency notices to both Janet and Jay. Janet paid the tax deficiency for those years and subsequently filed a separate action against the IRS claiming a refund for the years 1980 and 1981. Jay appealed his disallowance notice to the tax court and then to this court.

The tax court recognized that the key to the controversy was the interpretation of the 1978 dissolution decree and the interpretation of that decree in the 1980 and 1984 rulings. The tax court reasoned that the 1984 ruling—that the payments were installments of a property settlement—could be recognized for federal tax purposes if it were a true *nunc pro tunc* order, but not if it were a retroactive judicial determination. *Steen v. Commissioner of Internal Revenue*, 58 T.C.M. (CCH) 318, 321 (1989). The tax court looked to Iowa law and determined that the 1984 ruling was not a *nunc pro tunc* order. *Id.*

at 321–22. Neither party contests this holding on appeal.

Then, because the 1978 dissolution was not reached in a contested hearing but was based upon stipulations, the tax court held that it must independently examine the facts and circumstances surrounding the original divorce decree to determine the character of the property and the nature of the payments. *Steen*, 58 T.C.M. (CCH) 318, 322 (citing *Boucher v. Commissioner of Internal Revenue*, 710 F.2d 507, 512 (9th Cir.1983), which states: "Where the agreement is ambiguous as to the parties' intent, the surrounding facts and circumstances must be examined to ascertain the true nature of the payments."). Again, this basic assumption of the tax court is not attacked by either of the parties on appeal and frames the issue for our review. The tax court held that the payments to Janet were in the nature of a property settlement and not alimony, and hence were not deductible by Jay and Sheila Steen. *Steen*, 58 T.C.M. (CCH) at 324.

On appeal, Jay and Sheila Steen argue that the tax court decision was based on an erroneous view and application of Iowa law, because the tax court interpreted Iowa law as allowing the inclusion of previously inherited property in the pool of marital assets subject to division on dissolution. They follow with a lengthy argument, essentially factual in nature, that the tax court erred because the evidence is overwhelming that the parties intended the payments to be support. They argue that Janet Rauch did not surrender valuable property rights because Jay inherited his farm before marrying Janet, and because Iowa decisions support a conclusion that inherited property should not be considered in determining support requirements or rights in property division between spous-

---

**4.** Jay also treated payments he made toward a life insurance policy on his own life, which he had given to his wife as part of the dissolution settlement, as "alimony" or support payments and therefore deductible. (this amounted to $2,678 per year until 1990) The tax court disallowed this treatment, *Steen*, 58 T.C.M. (CCH) at 323–24, and Jay did not appeal that disallowance.

**5.** In the 1980 contempt proceeding Janet took the position that the payments were property settlement, and the court in its order adopted her position. In some of the earlier returns, Janet treated the payments as alimony.

es. They stress as significant that payments to Janet were subject to termination upon her death, and were not secured by real estate owned by Jay even though they were a charge on his estate. They further argue that the total payments made to Janet greatly exceeded one-half of the net value of the property accumulated by the couple during the marriage (excluding the farm), that Janet's needs were the primary consideration in negotiating the stipulation agreement and that the decree adequately took into consideration her support and property division interests.

We turn first to the question of how the tax court should treat the inherited farm under Iowa law. We review de novo conclusions of law by the tax court. *Moser v. Commissioner of Internal Revenue*, 914 F.2d 1040, 1044 (8th Cir.1990) ("[w]e review the tax court's ... conclusions of law *de novo*"); *Fendell v. Commissioner of Internal Revenue*, 906 F.2d 362, 363 (8th Cir.1990) (same). While we do not give the weight or deference to tax court determinations of state law that we do to those of district courts sitting in the state, we are convinced that the tax court carefully and accurately analyzed Iowa law in concluding that the payments made to Janet were in the nature of a property settlement.

The Steens argue that *In re Marriage of Thomas*, 319 N.W.2d 209 (Iowa 1982), construing a statute enacted in 1977, makes clear that inherited property is not subject to a property division except upon a finding that a refusal to divide the property is inequitable. The tax court, however, looked not only to Iowa statutes, Iowa Code Ann. § 598.17 (West 1979), but looked to the numerous cases discussing this issue, including *Locke v. Locke*, 246 N.W.2d 246, 251 (Iowa 1976) (citing *Schantz v. Schantz*, 163 N.W.2d 398, 405 (Iowa 1968)); *In re Marriage of Williams*, 199 N.W.2d 339 (Iowa 1972); *In re Marriage of Moffatt*, 279 N.W.2d 15, 20 (Iowa 1979); and *In re Marriage of Beeh*, 214 N.W.2d 170, 175 (Iowa 1974). The tax court properly concluded that applicable Iowa case law supported the proposition that property inher-

ited both before and during marriage can be considered in determining a property settlement. *Steen*, 58 T.C.M. (CCH) at 323. The tax court further recognized and squarely faced the issue of whether an Iowa court in a contested dissolution proceeding would have divided the property in such an inequitable manner as occurred when the marriage between Jay and Janet was dissolved. *Id.* We reject the argument of the Steens that the decision of the tax court was based upon an erroneous view of Iowa law.

We now turn to the Steen's factual argument that the evidence is overwhelming that the parties intended the payment to be support. We first observe that the tax court applied certain factors set forth in decisions not only in the tax court, *Beard v. Commissioner of Internal Revenue*, 77 T.C. 1275, 1284–85 (1981), and *Schatten v. United States*, 746 F.2d 319, 322–23 (6th Cir.1984), but also Iowa decisions, *Schantz v. Schantz*, 163 N.W.2d 398, 405 (Iowa 1968), as modified in *In re Marriage of Williams*, 199 N.W.2d 339, 342–45 (Iowa 1972). The Steens agree that these factors are applicable. They argue, however, that there is insufficient evidence to support the tax court's conclusion that the payments represent an annuity to Janet as a part of a property settlement, and that under the facts of the case no conclusion can be reached other than that the payments were support payments and therefore, deductible. The Commissioner responds that the tax court engaged in essentially a factual inquiry that we should review under the clearly erroneous rule. The parties have not briefed whether the questions presented are questions of law, fact, or mixed, although the government assumes the issues are factual. We believe it is not necessary to resolve this issue, and that it is appropriate to simply deal with the arguments asserted by the Steens.

Both parties concede that the tax court must treat the payments according to their substance and not according to labels that the parties used or the Iowa court adopted in the divorce decree. Appellant's Brief at 19; Appellee's Brief at 13; *see also Coker*

*v. United States,* 456 F.2d 676, 677 (8th Cir.1972) (per curiam) (" 'the fact that said payments were described as "permanent alimony" in the court decree is descriptive but not determinative' ") (citation omitted in original); *Wright v. Commissioner of Internal Revenue,* 543 F.2d 593, 598 (7th Cir.1976) ("[t]he use of a particular label in the divorce decree or settlement agreement is not conclusive ... of the parties' intentions"). *Cf. Boucher v. Commissioner of Internal Revenue,* 710 F.2d 507, 512 (9th Cir.1983) ("[t]his court has recognized that the parties have considerable freedom in determining the tax consequences of their divorce through a negotiated property settlement agreement"); and *Bernstein v. Commissioner of Internal Revenue,* 622 F.2d 442, 445 (9th Cir.1980) ("[t]he parties to divorce decrees have considerable freedom in controlling the tax consequences of the divorce").

The tax court recognized several factors indicating that the payments were in the nature of a property settlement. The payments were not to terminate upon Jay's death, but were to be a lien upon his estate. In addition, the payments were in partial exchange for Janet's property interests. The tax court also found it significant that the child support payments to Sandra Lea, after her eighteenth birthday, were to continue to Janet under the new title of alimony. Finally, the tax court considered that the total marital assets, including the farm, consisted of some $380,000 with liabilities of $69,000, and that after a twenty-three-year marriage, an Iowa court would not have divided such substantial property in such an inequitable manner so as to award Janet only a $25,000 cash payment, ownership of a $100,000 insurance policy and an automobile. The tax court also found it significant that Janet allowed Jay to retain the farm in order to maintain his livelihood, and that the payments received by Janet were in lieu of dividing or selling the land.

The facts above are fully supported by the evidence in the record. The record does not compel a conclusion contrary to that reached by the tax court. We are persuaded that the findings of the tax court fully support its conclusion that the payments to Janet were in the nature of property settlement rather than support.

· The tax court also recognized that the 1980 ruling of the Iowa district court referred to the payments as a property division, not subject to modification. This ruling was made after the issue was specifically raised by Janet in her pleadings before that court. Similarly, in 1984, the district court, in denying the application to modify the dissolution agreement, again referred to the payments as a property settlement, not support or alimony. While recognizing the tax problems involved for the individuals, the district court concluded "[c]learly what this was was a property settlement." *In re Marriage of Steen,* No. D1470–578, slip op. at 2, (Iowa Dist.Ct. December 21, 1984). The tax court observed that Jay had not sought review of either of these rulings. The tax court properly considered these rulings of the Iowa district court as further support for the conclusion it reached.

We have carefully considered the argument of the Steens, and conclude that the tax court did not err in holding that the payments to Janet were in the nature of a property settlement rather than support, and accordingly not deductible by the Steens.

We affirm the judgment of the tax court.