PAUL A. WILLIAMS AND MARILEE WILLIAMS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Williams v. Commissioner
Docket No. 1307-91
United States Tax Court
T.C. Memo 1993-163; 1993 Tax Ct. Memo LEXIS 167; 65 T.C.M. (CCH) 2414; April 15, 1993, Filed *167 For petitioners: Jodde Olsen Lanning. For respondent: Dennis R. Onnen. COUVILLION
COUVILLION
MEMORANDUM OPINION COUVILLION, Special Trial Judge: This case was heard pursuant to section 7443A(b) (3) [1] and Rules 180, 181, and 182. Respondent determined a deficiency in petitioners' 1986 Federal income tax in the amount of $ 7,625. The sole issue is whether payments made by Paul A. Williams (petitioner) to his former wife are deductible under section 215 [2] as "alimony and separate maintenance payments". *168 Some of the facts were stipulated and such facts, with the annexed exhibits, are so found and incorporated herein by reference. Petitioner's present wife, Marilee Williams, is a party to this proceeding only because she and petitioner filed a joint income tax return for the year at issue. At the time the petition was filed, petitioners were residents of Lee's Summit, Missouri. Petitioner and his former wife, Joan Brierty (Mrs. Brierty) were married in 1952 and divorced in December 1979. At the time of their marriage, petitioner was a first-year "pre-med" student at Tulane University at New Orleans, Louisiana, and Mrs. Brierty performed secretarial work for a law firm. Her secretarial work continued intermittently for a few years into the marriage; however, after that period of time, Mrs. Brierty was a full-time housewife raising their children. Six children were born of their marriage. Petitioner graduated from medical school at Tulane University and, after a year internship in Michigan, opened a general practice at Rensselaer, Indiana, where he and his family lived until August 1978, when he and Mrs. Brierty separated. Mrs. Brierty remained in the family residence at Rensselaer *169 with the two minor children until the home was sold in 1979, at which time she moved to Lake Charles, Louisiana. In 1979, petitioner discontinued his medical practice and began teaching at Indiana University. A Decree of Dissolution of petitioner's marriage was rendered by an Indiana State court and filed on December 5, 1979. Petitioner and Mrs. Brierty accumulated a sizeable amount of property during their marriage, none of which was acquired by gift or inheritance. The various items of property were generally described in a Dissolution and Settlement Agreement (the agreement), which petitioner and Mrs. Brierty entered into as part of their divorce and which was incorporated as part of the Decree of Dissolution by the Indiana court on December 5, 1979. The properties consisted of the family home; a corporation, the principal asset of which was a 223-acre farm; 50 percent of the stock of another corporation, which owned a 230-acre farm; stocks in a bank, a cattle company, and a "Doctor's Service Corporation"; a beneficial interest in a trust known as the "Mary Ellen Beaver Trust" (the trust); a deferred compensation plan; accounts receivables from petitioner's discontinued medical *170 practice; and furniture, household furnishings, and other personal property. From the evidence adduced at trial, it appears that petitioner and Mrs. Brierty had separate appraisals made of the marital properties at the time of their agreement; however, the values determined by each party's appraisers varied considerably. These appraisals, however, are not part of the agreement. The agreement conspicuously omits statements of value on all of the marital assets. The agreement merely provides for an amicable division in kind of the marital assets, with some properties allotted to Mrs. Brierty and the remainder allotted to petitioner. The agreement does not provide or include a balance sheet of the assets and liabilities from which the net worth of the marital estate can be ascertained. Based on the evidence presented at trial, the marital estate approximated $ 1 million in value; however, there was no evidence presented to establish what liabilities, if any, were owing, and whether the approximate $ 1 million value represented a net worth or net value. Petitioner agreed at trial that the assets received by him in the agreement exceeded the value of the assets received by Mrs. *171 Brierty. Given the fact that these values were not ascertained in the settlement of the marital estate, neither petitioner nor respondent, at trial, presented any evidence to establish the gross and net values of the marital estate at the time petitioner's marriage was dissolved, nor the difference in the value of the properties petitioner received over the value of the properties Mrs. Brierty received. Under Indiana law, in an action for the dissolution of marriage, the parties may agree in writing to provisions for maintenance, the disposition of property, and the custody and support of their children. If approved by the court, the terms of such agreement are incorporated and made part of the decree of dissolution of the marriage, as was done in petitioner's case. If no agreement can be reached, the court determines the proper disposition of property, child support, and child custody. Ind. Code sec. 31-1-11.5-10 (1976). Nevertheless, the court, in an action for dissolution, may not make any provision for maintenance of a spouse except under circumstances in which the court finds the spouse to be physically or mentally incapacitated. Ind. Code sec. 31-1-11.5-9 (1976). As noted, *172 the agreement between petitioner and Mrs. Brierty was filed with the Indiana State court and made part of the Decree of Dissolution of their marriage. In the agreement, petitioner "agrees to pay to the wife as alimony and for her support and maintenance periodic payments" of $ 49,000 on or before December 15, 1979; $ 11,000 during January 1980; $ 36,666 per year, in monthly installments, for 3 years beginning January 1, 1980; and $ 20,000 per year, in monthly installments, beginning January 1, 1983, for 16 years, ending December 1, 1998. The totality of these payments is $ 489,998 and extends over a period of almost 19 years. As security for these payments, Mrs. Brierty was provided a lien on the two farm properties allotted to petitioner in an amount equal to the unpaid balance of the periodic payments due her. The agreement contains several other references to these payments as alimony, including a provision that the payments would be deductible by petitioner on his Federal income tax returns. Additionally, the agreement provided that, "The wife accepts the alimony provisions herein made for her support and maintenance and agrees that they are fair and adequate and expressly *173 waives and releases all right, claim, and demand upon husband for support, maintenance, or alimony, except as expressly provided herein." There is no provision in the agreement which conditions petitioner's periodic payments on either his economic status or that of Mrs. Brierty. In fact, the agreement recognized that "the amount of the periodic payments for the first four years will be greatly in excess of the husband's ability to earn and pay same from his earnings", and that it might be necessary for petitioner to borrow in order to meet his obligations to Mrs. Brierty; in which event, Mrs. Brierty would release her security on petitioner's real estate, if necessary. There was no provision in the agreement which made the payments to Mrs. Brierty conditional; furthermore, the payments in fact continued after Mrs. Brierty's remarriage in 1984. Petitioner's obligation for these payments would not be discharged upon petitioner's death and would continue as a charge against his estate. However, the agreement is silent as to whether petitioner's obligation for the periodic payments would continue upon the death of Mrs. Brierty. The agreement also stated that "the wife shall have *174 no interest therein and does hereby release, waive, quit, and grant any and all right, title and interest to all of the rest" of the marital property to petitioner, who would hold it as his "sole" property. There was additional language addressing Mrs. Brierty's interest in the trust, wherein she released and irrevocably quitclaimed "any and all interest which she may have or claim, now or at any time in the future, as a beneficiary of said Trust". The agreement provided that petitioner's obligation for child support would be satisfied by distributions from this trust. The agreement recognized that petitioner was a defendant in six cases pending in State courts in Illinois and Indiana seeking aggregate damages of $ 550,000. Although petitioner had not been decreed liable in any of these cases and was contesting his liability, the agreement provided that, in the event petitioner was held liable, Mrs. Brierty would be responsible for one-half of such liabilities, including one-half of all expenses incurred by petitioner in defending himself. In the event Mrs. Brierty failed to pay her share of these liabilities, petitioner could withhold or receive credit for these amounts out of *175 the periodic payments owing to Mrs. Brierty. During 1986, petitioner made periodic payments in the amount of $ 19,992 to Mrs. Brierty pursuant to the agreement and deducted this amount on petitioner's income tax return as alimony. Respondent disallowed the deduction on the ground that the $ 19,992 constituted part of a property settlement and was, therefore, not deductible by petitioner. Under section 215, payments are deductible as alimony or separate maintenance if those payments are includable in the recipient's gross income under section 71. Yoakum v. Commissioner, 82 T.C. 128, 134 (1984). Section 71(a) provides that the former wife must include in her gross income periodic payments received in discharge of a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under a divorce decree. Since the payments at issue are periodic [3] and are imposed under a decree of divorce, the question is whether the payments constitute the support or maintenance of Mrs. Brierty, or whether the payments represent the satisfaction of a property settlement between petitioner and Mrs. Brierty. The requirement *176 that the payments be made in discharge of a legal obligation imposed "because of the marital or family relationship" has been interpreted to require that the payments be in the nature of support rather than a property settlement. Beard v. Commissioner, 77 T.C. 1275, 1283 (1981); Steen v. Commissioner, 923 F.2d 603 (8th Cir. 1991), affg. T.C. Memo. 1989-542; Warnack v. Commissioner, 71 T.C. 541 (1979); Bishop v. Commissioner, 55 T.C. 720 (1971). Payments which are part of a property settlement are capital in nature and, therefore, are neither taxable to the recipient under section 71 nor deductible by the payor under section 215. Yoakum v. Commissioner, supra; Thompson v. Commissioner, 50 T.C. 522, 525 (1968). *177 Petitioners have the burden of proving that the payments in question were in the nature of support rather than a property settlement. Rule 142; Welch v. Helvering, 290 U.S. 111 (1933); Yoakum v. Commissioner, supra at 139. It is well settled that the determination of whether payments are in the nature of support or are part of a property settlement does not turn on the labels assigned to the payments by the court in the divorce decree or by the parties in their agreement. Hesse v. Commissioner, 60 T.C. 685, 691 (1973), affd. without published opinion 511 F.2d 1393 (3d Cir. 1975); Thompson v. Commissioner, supra; Bardwell v. Commissioner, 38 T.C. 84 (1962), affd. 318 F.2d 786 (10th Cir. 1963). The issue is a factual one and requires an examination of all the surrounding facts and circumstances. Yoakum v. Commissioner, supra at 140; Widmer v. Commissioner, 75 T.C. 405, 409 (1980); Wright v. Commissioner, 62 T.C. 377, 389 (1974), *178 affd. 543 F.2d 593 (7th Cir. 1976). In Beard v. Commissioner, supra at 1284-1285, this Court delineated factors which indicate when payments are more in the nature of a property settlement than a support or maintenance allowance: (1) Where the parties in their agreement or in the court decree intended the payments to effect a division of their assets; (2) where the recipient surrendered valuable property rights in exchange for the payments; (3) where the payments are fixed in amount and not subject to contingencies, such as the death or remarriage of the recipient; (4) where the payments are secured; (5) where the amount of the payments plus the other property awarded to the recipient equals approximately one-half of the property accumulated by the parties during the marriage; (6) where the need of the recipient was not taken into consideration in determining the amount of the payments; and (7) where a separate provision for support was provided elsewhere in the decree or agreement. The absence of one or more of these factors may tend to indicate that the payments are more in the nature of a support allowance. Taking *179 into account the agreement and the facts concerning the parties' intentions, as well as the evidence adduced at trial, the Court concludes that petitioner and Mrs. Brierty intended to make a division of their assets by virtue of the payments petitioner obligated himself to make. Although the agreement characterized the payments as "support", "maintenance", and "alimony", the agreement as a whole clearly belies these characterizations. The marital estate was divided between petitioner and Mrs. Brierty. That portion of the agreement was certainly a division of assets. Petitioner acknowledged that the value of the assets he received exceeded the value of the assets Mrs. Brierty received. Mrs. Brierty relinquished and quitclaimed all her rights to the assets allotted to petitioner in exchange for the payments to be made by him. These payments were secured by a lien on some of the properties allotted to petitioner. The payments were fixed and were not subject to contingencies such as the death of petitioner or the remarriage of Mrs. Brierty, nor were the payments determined by the needs of Mrs. Brierty. Petitioner acknowledged the disparity in the values of the properties allotted *180 to him and Mrs. Brierty; consequently, it is reasonable to assume that the totality of the payments to be made to Mrs. Brierty over approximately 19 years, at present value, would equalize the value of Mrs. Brierty's share of the marital estate with that which was received by petitioner. Petitioner presented no evidence to establish the contrary, as it was his burden to do. The agreement provided separately with respect to petitioner's child support obligations. Of significance is the acknowledged liability of Mrs. Brierty in the agreement for one-half of contingent liabilities which were pending and undetermined at the time of the agreement by virtue of the six suits which were pending against petitioner. All of these factors taken together establish to the Court's satisfaction that petitioner and Mrs. Brierty were effecting and intended a division of their property in the agreement they executed. Petitioner failed to sustain his burden of establishing that the payments were more in the nature of support or maintenance than a property settlement. The Eighth Circuit Court of Appeals, where this case would be appealed, analyzed the issue of whether payments under an Iowa divorce *181 decree were in the nature of a property settlement or support in Steen v. Commissioner, supra. In that case, the court also found that payments characterized as alimony in the divorce decree were actually in the nature of a property settlement, where the payments continued after the death of the payor were in partial exchange for property interests of the recipient and resulted in a more equitable division of marital property. Petitioner argues that, under Indiana law, a division of property does not have to be equal and can be based upon a court's determination that one spouse did not make an equal contribution with the other spouse in acquisition of the marital property. Thus, petitioner argues that, because the Indiana court adopted the agreement, with an unequal division of the marital estate, the Decree of Dissolution constituted a determination of property by virtue of State law, which this Court must recognize, and the periodic payments necessarily constituted support and maintenance payments. Although petitioner is correct in asserting that State law defines property rights, Federal law determines the tax consequences which attend these *182 defined rights. Sampson v. Commissioner, 81 T.C. 614, 618 (1983), affd. without published opinion 829 F.2d 39 (6th Cir. 1987). This Court has occasionally looked to State law in considering the question whether payments between spouses constitute alimony or a settlement of property. See Yoakum v. Commissioner, supra at 136; Steen v. Commissioner, supra; Ray v. Commissioner, T.C. Memo. 1991-106. However, petitioner's argument on this point is not persuasive. The agreement does not provide or state that the property division between petitioner and Mrs. Brierty was unequal, nor did Mrs. Brierty acknowledge in the agreement that her contributions in acquisition of the marital estate were less than the contributions of petitioner. Moreover, petitioner presented no evidence at trial to establish that his contributions in the acquisition of the marital estate exceeded the contributions of Mrs. Brierty. In fact, Indiana State law recognizes that the activities of one spouse as a homemaker have a value and contribute to the acquisition *183 of property during the marriage. McCormick v. Commissioner, T.C. Memo. 1987-418; Temple v. Temple, 435 N.E.2d 259, 262 (Ind. Ct. App. 1982). For such a reason, this spouse is entitled to share in the marital property upon dissolution of the marriage, without regard to whether such spouse made a financial contribution to the purchase of such property, or whether the title to such property was in such spouse's name. Temple v. Temple, supra; Finley v. Finley, 422 N.E.2d 289, 300 (Ind. Ct. App. 1981). In addition, the Indiana State courts consider the contribution of the homemaker in making a "just and reasonable" division of the marital property. Temple v. Temple, supra at 260, 262. The burden of proof on this issue rested with petitioner. The Court, therefore, rejects this contention. Petitioner also contends that he was audited by the Internal Revenue Service for a prior year, and his deduction of the payments to Mrs. Brierty was not questioned. It is well established that respondent is not barred by the doctrine *184 of estoppel from adopting a different position in later years where the correct treatment of certain payments in a prior year's audit was not questioned. Rose v. Commissioner, 55 T.C. 28, 32 (1970); Holland v. Commissioner, T.C. Memo. 1983-717. Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The relevant divorce instruments involved in this case were entered into prior to Jan. 1, 1985. Consequently, the alimony rules prior to amendment by the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 422, 98 Stat. 795, apply.↩
3. Installment payments discharging an obligation which is to be paid over a period ending more than 10 years from the date of the decree, instrument, or agreement shall be treated as periodic payments for sec. 71(a). Sec. 71(c)(2). The last installment is to be paid by petitioner on Dec. 1, 1998, almost 19 years after the Decree of Dissolution was filed on Dec. 5, 1979; therefore, these amounts qualify as "periodic payments" pursuant to sec. 71(a)(1).↩