PER CURIAM.
 

 This case involves the proper characterization for purposes of the Bankruptcy Act of a written property settlement agreement entered into in 1972 between the appellant, Charles S. Rule, and his then wife, Gayle G. Rule, in connection with their contemplated divorce. In 1979 Mr. Rule was adjudicated a voluntary bankrupt and was granted a discharge. The present case involves a controversy between Mr. and the former Mrs. Rule, who for a brief period of time was Mrs. Phillips, as to whether the former’s obligation under the contract to make mortgage payments, including taxes and insurance, on the family home in Little Rock, Arkansas, is a dischargeable debt. The answer to that question depends on whether the obligation is a debt in the nature of alimony or support money and is, therefore, not dischargeable under the provisions of what was then 11 U.S.C. § 35(aX7).
 

 After an evidentiary hearing the bankruptcy judge determined that the obligation is not dischargeable. Mr. Rule appealed to the district court, and the holding of the bankruptcy judge was affirmed. This appeal followed.
 

 Many of the facts of the case are not in dispute. Mr. and Mrs. Rule were married in or about 1958 and remained married until their divorce in 1972. Two children, a boy and a girl, were born of the marriage. The couple owned a home on North Spruce Street in Little Rock, which was being paid for under a note and mortgage executed by Mr. Rule and probably by Mrs. Rule as well. Monthly payments amounting to about $289.00 each included principal and interest, and taxes and insurance.
 

 By 1972 the Rules had become estranged and divorce was contemplated. The economic positions and earning capacities of Mr. and Mrs. Rule were quite disparate. Mr. Rule was apparently successfully engaged in the carpeting business in Little Rock. Mrs. Rule was a homemaker with no advanced education and with little work experience. As stated, the couple had two children who were minors at the time and who might be expected to continue to remain under the care of their mother.
 

 The parties agreed on a property settlement that was prepared by a reputable Little Rock attorney. Mr. Rule agreed to pay $400.00 per month to his wife as child support and to convey the home to her. He also agreed to continue to make the mortgage payments, and to pay the taxes and insurance on the house. For her part, Mrs. Rule agreed to release to Mr. Rule her interest in all of the rest of his property with the understanding that as to that property Mr. Rule would discharge existing indebtedness or would refinance such indebtedness so that Mrs. Rule would not be exposed to liability with respect to it.
 

 The divorce proceeding resulted in a decree of the Pulaski County Chancery Court
 
 *1100
 
 that incorporated the property settlement that has been described.
 
 [1]
 

 Between 1972 and 1974 Mr. Rule complied with his obligations under the settlement agreement as incorporated in the decree. In 1974 Mrs. Rule married a Mr. Phillips and brought him into the Spruce Street home. He remained there only thirty-three days, and very shortly thereafter Mrs. Rule and Phillips were divorced. During the time Phillips was occupying the house, Mr. Rule did not make the mortgage payments called for by the settlement agreement. However, after Mr. Phillips moved out of the house, Mr. Rule resumed the payments in question.
 

 In 1978, Mr. Rule filed in the chancery court an application for relief from future house payments and child support, apparently based upon his deteriorating financial situation. That application was denied by the Chancellor in August, 1978 in a letter opinion that in present context is highly ambiguous. The Chancellor was of the view that the house payments could be merely “contract payments,” or could be “alimony,” or could be part one and part the other. The opinion was written prior to Mr. Rule’s bankruptcy and without regard to the effect that the opinion might have in any bankruptcy proceeding.
 

 Rule filed a voluntary petition in bankruptcy in January, 1979 and listed his wife as a creditor. He was duly adjudicated and discharged. In due course he commenced this proceeding for the purpose of establishing that his obligation to make the house payments in question is a dischargeable debt. Mrs. Rule resisted the application.
 

 Certain underlying, applicable legal principles are not in dispute here.
 

 During the period with which we are concerned, 11 U.S.C. § 35(a)(7) (1978) provided in substance that an obligation was not dischargeable in bankruptcy if it was for alimony or for the support of a divorced spouse or a child.
 
 [2]
 

 The parties agree that such a debt is not dischargeable, but they also agree that if a property settlement between a husband and wife in contemplation of divorce is simply a contract between them relating to property rights and is not in the nature of alimony or support payments, the debt is as discharge-able as any other ordinary debt. And the parties likewise agree that the characterization of a property settlement as a mere contract, on the one hand, or as alimony or support money, on the other hand, is to be determined by reference to applicable state law.
 

 If Mrs. Rule had not remarried in 1974 this case would not have presented any particular problem beyond proper construction of the original contract between the parties. However, the fact of the remarriage raises the question of the effect under Arkansas law of a remarriage by a wife on the obligation of a former husband to continue to pay alimony to the remarried wife.
 
 [3]
 

 In seeking a dischargeability determination in the bankruptcy court Mr. Rule alleged in substance that his obligation to make the house payments is a simple contract debt and is dischargeable. Mrs. Rule in opposing the application took the position that the house payments are in the nature of support money for herself and minor children, and that Mr. Rule’s obligation to make those payments is not a dischargeable debt.
 

 
 *1101
 
 After a hearing, the bankruptcy judge held that the obligation is not dischargeable in bankruptcy. The district court agreed, finding that the payments are in the nature of support for Mrs. Rule and the minor children.
 

 That characterization immediately raises the question under Arkansas law of whether the remarriage of a divorced wife automatically terminates a court imposed obligation on the former husband to pay alimony to the former wife.
 
 [4]
 

 Between 1867 and at least 1951 the law of Arkansas was clear that an award of alimony in favor of a wife remained in effect, except to the extent properly modified by the court, only during the joint lives of the parties or until a remarriage of the wife, and that where the wife remarried, the original award was not reinstated by the death of the second husband.
 
 See Bowman v. Worthington,
 
 24 Ark. 522 (1867);
 
 Kurtz v. Kurtz,
 
 38 Ark. 119 (1881);
 
 Brown v. Brown,
 
 38 Ark. 324 (1881);
 
 Casteel v. Casteel,
 
 38 Ark. 477 (1882);
 
 Birnstill v. Birnstill,
 
 218 Ark. 130, 234 S.W.2d 757 (1951).
 

 However, on the basis of certain more recent decisions of the Arkansas Supreme Court the district court concluded that a husband’s obligation to pay alimony to his ex-wife does not terminate automatically on the remarriage of the wife, that the remarriage is only one factor to be considered, and that the obligation continues until the former husband is relieved of it by the original divorce court.
 
 See Beasley v. Beasley,
 
 247 Ark. 338, 445 S.W.2d 500 (1969);
 
 Wear v. Boydstone,
 
 230 Ark. 580, 324 S.W.2d 337 (1959).
 
 See also Holt v. Holt,
 
 253 Ark. 456, 486 S.W.2d 688 (1972);
 
 Byrd v. Byrd,
 
 252 Ark. 202, 478 S.W.2d 45 (1972). The district court noted that Mr. Rule was required to apply to the divorce court for relief, that he had done so in his 1978 application to the chancery court, and that relief had been denied. The district court also examined the circumstances surrounding the execution of the agreement and concluded that the obligation in question is not dischargeable.
 

 Counsel for Mr. Rule does not contend that a remarriage of a former wife automatically terminates from a mechanical standpoint an obligation on the part of the first husband to make alimony payments called for by the divorce decree, and concedes that the husband must apply for relief to the divorce court.
 
 [5]
 
 Counsel contends, however, that once application for relief is made to the divorce court supported by a showing that the former wife has remarried, the husband is entitled to relief as a matter of course. He argues that since the chancellor correctly denied relief from the house payments, finding them to be merely a contractual obligation, the district court erred in finding them to be in the nature of support and should have held the debt dischargeable in bankruptcy.
 

 While we are not convinced that the question of the termination of alimony payments upon remarriage is entirely free from doubt, we must give great weight to the interpretations of the bankruptcy judge and the district judge.
 
 American Motorists Ins. Co. v. Samson,
 
 596 F.2d 804, 807-08 (8th Cir. 1979), and cases cited. We have carefully reviewed the district court opinion and the applicable Arkansas case law and conclude that the district court made a reasonable interpretation of Arkansas law.
 
 [6]
 

 
 *1102
 
 The judgment of the district court is therefore affirmed. Each side will bear its own costs.
 

 [1]
 

 . We are not advised as to what deed or other muniments of title, if any, were exchanged between Mr. and Mrs. Rule. The divorce decree, of course, was recorded.
 

 [2]
 

 . Under the Bankruptcy Reform Act of 1978 the subject is covered by current 11 U.S.C. § 523(a)(5).
 

 [3]
 

 . We are not concerned here with any possible present day obligation of a former wife to pay alimony to a former husband. And no contention is made that the remarriage of a wife who has been given an award of support money for the benefit of minor children relieves the husband of his continuing obligation to make those payments during the continuing minorities of the respective children. The record in this case reflects that the daughter of Mr. and Mrs. Rule has now attained her majority, and that the son, who may still be a minor, has left the original family home and is now living with his father.
 

 [4]
 

 .As we have seen, the obligation to make the house payments was ultimately imposed by the chancery court since the agreement between Mr. and Mrs. Rule was incorporated in the divorce decree. By the time at which the controversy reached the bankruptcy court and the district court, Mr. Rule’s obligation to support his children had largely become moot.
 
 See
 
 n.3,
 
 supra. So
 
 what we have here is really a controversy about his obligation to make the house payments for the benefit of his former wife; that is, we are concerned here with “alimony.”
 

 [5]
 

 . That view appears to have been taken by the Arkansas Supreme Court in 1882 in
 
 Casteel v. Casteel,
 
 38 Ark. 477 (1882), and it is certainly good law in Arkansas today.
 

 [6]
 

 . We note that Mr. Rule did not appeal from the 1978 ruling of the chancery court although he might have done so, and that shortly after Phillips moved out of the Spruce Street house Mr. Rule voluntarily resumed making the house payments and continued to do so prior to the Chancellor’s denial in 1978 of Rule’s application for relief from alimony.