BENNETT S. AND MARCI E. WALSTATTER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Walstatter v. Commissioner
Docket No. 4490-89.
United States Tax Court
T.C. Memo 1992-152; 1992 Tax Ct. Memo LEXIS 170; 63 T.C.M. (CCH) 2389; T.C.M. (RIA) 92152; March 16, 1992, Filed *170 Decision will be entered for respondent. Stephen L. Mason, for petitioners. Paul N. Schneiderman, for respondent. WELLS
WELLS
MEMORANDUM FINDINGS OF FACT AND OPINION WELLS, Judge: Respondent determined a deficiency in petitioners' Federal income tax for taxable year 1985 in the amount of $ 10,329.46. The term "petitioner" will hereinafter only refer to petitioner Bennett S. Walstatter. The instant case involves the deductibility of certain payments required pursuant to the divorce judgment entered in the divorce proceedings between petitioner Bennett S. Walstatter and his former spouse, Susan R. Walstatter, whose maiden name is Susan Ray (Ms. Ray). The issues we must decide are: (1) Whether certain payments made by petitioner to Ms. Ray pursuant to the divorce judgment are deductible alimony payments or nondeductible child support payments, and (2) whether certain other payments made by petitioner to Ms. Ray pursuant to the divorce judgment are deductible alimony payments or nondeductible payments made as a part of a property settlement. FINDINGS OF FACT Some of the facts and certain documents were stipulated for trial pursuant to Rule 91. Unless otherwise indicated, *171 all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The stipulated facts are incorporated into this Opinion irrespective of any restatement below. At the time the petition in the instant case was filed, petitioners resided in Kansas City, Missouri. During 1982, petitioner and Ms. Ray were divorced. During their marriage Ms. Ray gave birth to two children, Michael and Matthew, who were minors at the time of the divorce and during the year in issue. The divorce judgment, dated June 16, 1982, (the divorce judgment) stated: And the defendant shall pay to the plaintiff as unallocated alimony and support the following amounts: a. Commencing on June 18, 1982, and continuing on each Friday thereafter until September 30, 1983, the sum of Five Hundred and 00/100 ($ 500.00) Dollars per week; and (i) Commencing on June 18, 1982, and continuing for fourteen (14) subsequent Fridays, a total of fifteen (15) weeks, the sum of One Hundred and 00/100 ($ 100.00) Dollars per week, or a total of Fifteen Hundred and 00/100 ($ 1,500.00) Dollars. Since plaintiff intends to utilize *172 these payments for her attorney fees, defendant shall make these payments directly to Donald J. Cantor, Esq. made payable to him. b. The defendant shall pay, as additional unallocated alimony and support (i) in the summer of 1982 (and when due to the camps) an amount equal to the cost of one month overnight camp for Matthew and two months of day care camp for Michael; and (ii) as due by plaintiff, an amount equal to the amount payable by plaintiff for her tuition, books and bar review course at the University of Connecticut School of Law for her third year of law school. The plaintiff shall send the children to camp as aforesaid. c. Any payments made in any calendar year by defendant which shall exceed the aggregate due for that year under the provisions of this Judgment shall be applied to payments coming due hereunder in their inverse order of maturity. d. Said unallocated alimony and support shall be nonmodifiable as to term, amount and due dates except in the event that plaintiff or a child shall suffer a condition of ill health which reasonably prevents plaintiff from completing law school, or having completed law school, prevents her from taking examination (bar exam) *173 for admission to the practice of law in the State of Connecticut, said unallocated alimony and support shall continue and be modifiable for the duration of such condition. At such time as such condition no longer prevents plaintiff from completing law school and taking the bar exam, said unallocated alimony and support shall irrevocably terminate on the 60th day following the first bar exam plaintiff could have taken in the exercise of diligence and promptitude. e. Commencing on the first Friday following termination of unallocated alimony and support and continuing each Friday thereafter through and including the date of the earliest Emancipation Event occurring to each child respectively, as such Emancipation Events are defined later in this Judgment, the defendant shall pay to the plaintiff as support for each child, the sum of One Hundred Fifty ($ 150.00) Dollars per week. f. The acquisition of full-time employment by plaintiff as an attorney or otherwise shall not of itself constitute such a substantial change in circumstances as to warrant a modification of the support. g. Anything in the Judgment to the contrary notwithstanding, all such payments set forth herein as *174 would otherwise accrue after the death or remarriage of the plaintiff or cohabitation (as used in Section 466-86 of Connecticut General Statutes) of the plaintiff with another shall immediately cease and terminate, provided, however, that, at the election of defendant, which may be exercised from year to year, defendant may, after the termination of unallocated alimony for any reason (except the death of plaintiff), make the payments set forth in "e." above as unallocated alimony and support, provided such payments are made at no cost to her. All such payments to be nonmodifiable but fifty (50%) percent of which shall terminate upon the occurrence of an Emancipation Event as to each child. And forthwith upon the entry of the dissolution decree, the defendant shall as lump sum alimony and not as a division of property convey to the plaintiff all of his interest in and to the marital residence at 55 Bainton Road, West Hartford, Connecticut. Said residence is subject to a mortgage and real estate taxes as well as other obligations and plaintiff shall assume all obligations in connection with said residence including the outstanding mortgage and notes and real estate taxes encumbering *175 the residence, as well as all other obligations hereinafter connected therewith. As additional lump sum alimony the defendant shall obtain the commitment of Hartford National Bank and Trust Company to exhaust its remedies against defendant as a condition precedent to its seeking satisfaction from plaintiff on a certain encumbrance securing the defendant's "practice loan" on the premises and defendant shall hold plaintiff harmless from any liability on said "practice loan" and from any liabilities not on Schedule B attached hereto which have been incurred by him. Except as to the "practice loan" the plaintiff shall hold the defendant harmless with respect to these and any future obligations and shall indemnify the defendant for any losses or damages he may sustain relating to the real estate or said obligations. And if as a result of a final and binding judicial determination to the contrary, or because of some subsequent change in the governing law or its authoritative interpretation, it is established in the future that any or all of alimony and support ordered in paragraphs "a." through "g." are not deductible by the defendant, the payments required to be made herein by the defendant *176 to the plaintiff for her support shall be renegotiated by the parties. In any such renegotiation the parties shall consider the extent that the plaintiff, by reason of such event, is relieved from the payment of Federal and State income taxes and the amount of the additional Federal and State taxes imposed upon the defendant. Should the parties fail to agree, the issue shall be submitted to the Court for determination as to the amount of the reduction of the defendant's obligation by reason of the aforesaid tax changes. If subsequent to the date of this Judgment any deficiencies are asserted by the Commissioner of Internal Revenue, or any refunds are received with respect to joint returns filed by the defendant and the plaintiff prior to the date of this Judgment, then such deficiencies shall be borne by and such refunds shall belong to the defendant. The plaintiff shall sign over to the defendant all her rights to any refund checks which come within the scope of this paragraph. With respect to a child, an Emancipation Event shall occur or be deemed to have occurred upon the earliest happening of any of the following: (a) Reaching the age of eighteen (18) years. (b) Marriage *177 (even though such marriage may be void or voidable and despite any annulment of it). (c) Permanent residence away from the residence of the plaintiff. A residence at boarding school, or camp is not to be deemed a residence away from the residence of the plaintiff, and hence, such residence at boarding school or camp is not an Emancipation Event. (d) Death. The alimony and support payments made by defendant to plaintiff shall be equivalent to unallocated alimony and support and the plaintiff, in consideration thereof shall have full responsibility, during the period set forth for such payments on pages 3, 4 and 5 of this Judgment, for the support of the children, provided, however, that nothing in this Judgment is intended to or shall preclude the Court from issuing orders pursuant to Connecticut General Statutes Section 46b-84 (or any section of like import) for the support of the children. The plaintiff shall be entitled to claim and list the children as her dependents on her Federal Income Tax return for 1982 and subsequently so long as the children shall reside with her and the support furnished by her shall in fact exceed fifty (50%) percent of the total support furnished *178 each child.
Petitioner was primarily liable for the "practice loan" referred to in the divorce judgment. Ms. Ray was a guarantor of the practice loan, which, at the time of the divorce, had an outstanding balance of $ 44,000. On October 4, 1982, petitioner filed a petition in bankruptcy in the United States Bankruptcy Court for the District of Connecticut. As a result of the bankruptcy, petitioner was discharged from the practice loan. Hartford National Bank subsequently brought suit against Ms. Ray as guarantor of the practice loan. Hartford National Bank and Ms. Ray settled the suit. As a part of the settlement, Ms. Ray gave Hartford National Bank a note in the amount of $ 44,526.83, calling for monthly payments of $ 478.47 each until the principal of the note plus interest had been repaid. The note was secured by the residence which petitioner had conveyed to Ms. Ray pursuant to the divorce judgment. On November 1, 1984, Ms. Ray brought suit against petitioner demanding that he indemnify her with respect to all of her liability as guarantor of the practice loan, and that he pay her attorney's fees. The suit also demanded modification of the divorce judgment and included *179 a contempt claim based upon petitioner's failure to fully comply with the divorce judgment. On July 3, 1984, the suit brought by Ms. Ray against petitioner was settled. The settlement was incorporated into a judgment modifying the divorce judgment (the modification judgment). Pursuant to the modification judgment, petitioner was required to reimburse Ms. Ray for her payments to Hartford National Bank on the note and mortgage she gave in settlement of her obligation as guarantor of petitioner's practice loan. The modification judgment required petitioner to pay, in monthly installments, one-half of the $ 34,498 in attorney's fees Ms. Ray incurred in defending the action brought by Hartford National Bank against her with respect to petitioner's practice loan. The modification judgment also provided that petitioner was required to execute a wage assignment agreement as security for payment of petitioner's obligations pursuant to the modification judgment. The principal terms of the modification judgment were as follows: 1. The Husband shall pay to the Wife as additional unallocated alimony and child support: the amount of Five Hundred Thirty-seven ($ 537.00) Dollars per month *180 beginning on June 1, 1984, and continuing on the first day of every month thereafter for one hundred and thirteen (113) additional consecutive monthly payments through the payment of November 1, 1993. Beginning on December 1, 1993, he will make consecutive monthly payments of Four Hundred Seventy-eight Dollars and forty cents ($ 478.40) and will continue these consecutive monthly payments through the payment of July 1, 1999. Beginning on August 1, 1999, he will make ninety-six (96) consecutive monthly payments of Six Hundred Forty-forty Dollars and ninety-two cents ($ 644.92). 2. None of the provisions of this Agreement shall be modifiable as a result of any future substantial change of condition, (including, but not being limited to, remarriage of the Wife) or for any reason except the death of the Husband. Notwithstanding anything to the contrary: a. The Wife agrees to cooperate in any law suit brought against the Connecticut National Bank or its successors, including being a witness and/or a named Plaintiff, to determine the proper amount of money owed to them by the Wife for settlement of the practice loan. b. The Wife agrees that if the amount owed by her to the Connecticut *181 National Bank is reduced, the payments owed to her for settlement of the practice loan by the Husband pursuant to Clause 1 of this Agreement shall be reduced in the same exact way and amount as the reduction of her said obligation to the Bank. If the Wife's obligation to the Bank ends sooner than is presently the case as a result of any said reduction, the portion of the Husband's obligation which was to begin on August 1, 1999 pursuant to Clause 1 of this Agreement as amended by this document will instead begin one month after the Wife's obligation to the Bank ends and will continue for ninety-six (96) consecutive monthly payments. The result of this provision shall be that the net cash flow effect to the Wife after said reductions will be the same as it was before the reductions so that she will have the same funds available for the support of herself and the minor children of the parties. 3. a. The Husband shall at all times maintain in effect life insurance policies with the Wife as primary beneficiary and the children as secondary beneficiaries with net claim values at lease equal to the remaining sum of all financial obligations owed to the Wife pursuant to this Agreement *182 and agrees not to revoke the Wife or the children as beneficiaries at the levels prescribed herein until his obligations under this Agreement are fulfilled. b. The Husband shall at all such times keep the policies in full force and effect, and shall pay all premiums, dues and assessments thereon, and shall upon request, transmit to the Wife copies of receipts showing that such dues, premiums and assessments have been paid. c. The Husband shall not borrow against the policies, or in any manner pledge or encumber the same, so as to reduce the death benefits below amounts required by this Agreement without the Wife's prior written agreement. d. If the Husband fails to pay the premiums and failure to pay such premiums would reduce the aggregate death benefits below the amount required by this Agreement from time to time, the Wife shall have the option to pay the same, or to convert the policies or any of them into paid-up insurance, or she may surrender and cancel the policies or any of them and receive cash payment thereon. e. If the Wife elects to pay any premiums under the conditions set forth in the subparagraph immediately above, the Husband shall forthwith become indebted *183 to the Wife in the sum or sums so paid; and such sum or sums shall be added to the amounts payable by the Husband to the wife under the provisions hereof. f. If the policies are not in full force and effect at the time of the Husband's death of if the Wife, being then entitled to receive the full proceeds thereof, does not receive the same, then notwithstanding anything to the contrary contained in this Agreement, the Wife shall have a creditor's claim against the Husband's estate for the difference between the face amount of the policies required to be maintained under this Agreement at the time of the Husband's death and the amount she actually receives therefrom upon the Husband's death, less any amounts she may have received upon surrender and cancellation of the policies. g. Within thirty (30) days after the execution of this Agreement, the Husband shall take all measures which are necessary so that all insurers will immediately notify the Wife prior to any forthcoming or threatened termination of coverage for any reason. Within thirty (30) days after the execution of this Agreement, the Husband shall exhibit to the Wife or her counsel satisfactory evidence that the provisions *184 of this clause, insofar as they require steps to be taken by the Husband, have been duly carried out. h. The Husband shall be required, upon the reasonable request of the Wife, to furnish evidence to the Wife that the above policies are in full force and effect and that she and the minor children are named as beneficiaries thereon. 4. If the Husband shall commit a breach of any of the provisions of this Agreement or of the Judgments of any Courts rendered pursuant hereto, or of the June 16, 1982 Judgment of the Superior Court of the Judicial District of Hartford/New Britain at Hartford, Connecticut, then the Wife shall be indemnified by the Husband and held harmless by him with respect to all of her damages, including court costs and reasonable attorneys' [sic] fees. Said indemnification rights shall be effective when any claim or demand is made upon the Wife and she need not wait until suit is filed against her in order to enforce this clause. Said unallocated alimony and support payments and said indemnification, as well as all of the other obligations incurred by the Husband pursuant to this Agreement are an integral part of the bargain for support and all satisfy portions *185 of this Agreement and shall not be considered dischargeable in any bankruptcy proceeding.
During the taxable year in issue, petitioner made 12 monthly payments to Ms. Ray in the amount of $ 537 each, for a total of $ 6,444, and 52 weekly payments in the amount of $ 300 each, for a total of $ 15,600. On his Federal income tax return for the taxable year in issue, petitioner deducted all of his payments (a total of $ 22,044) to Ms. Ray as alimony. OPINION Petitioners bear the burden of proving error in respondent's determinations. Rule 142(a). The relevant divorce instruments involved in the instant case were entered prior to January 1, 1985. Consequently, we must apply the alimony rules as they existed prior to their amendment by the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 422, 98 Stat. 795. Sec. 1.71-1T(e), Temporary Income Tax Regs., 49 Fed. Reg. 34455, 34456 (Aug. 31, 1984). Individuals may deduct alimony paid during the taxable year. Sec. 215(a). To be deductible, the alimony payment must be includable in the income of the recipient spouse under section 71. Generally, section 71(a) provides that alimony payments are taxable income to the *186 recipient. Section 71(b) provides that section 71(a) "shall not apply to that part of any payment which the terms of the decree, instrument, or agreement fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children of the husband." Petitioners contend that the divorce judgment does not "fix" any amount as child support and therefore the $ 300 that petitioner paid to Ms. Ray each week during the year in issue is considered taxable alimony. Respondent contends that such payments constitute child support. The statutory directive of section 71 that child support payments be "fixed" is taken literally. Child support cannot be inferred from intent, surrounding circumstances, or other subjective criteria. Commissioner v. Lester, 366 U.S. 299 (1961). In Lester, the Supreme Court refused to consider the statutory requirement satisfied by drawing an inference from the fact that the parties' agreement provided for percentage reduction of payments by a husband to a wife upon the marriage, emancipation, or death of any of their three children. After examining the legislative history of the statutory predecessor *187 of section 71(b), the Supreme Court quoted from the report of the Office of the Legislative Counsel to the Senate Committee: If an amount is specified in the decree of divorce attributable to the support of minor children, that amount is not income of the wife * * *. If, however, that amount paid the wife includes the support of children, but no amount is specified for the support of the children, the entire amount goes into the income of the wife * * *. The Supreme Court also stated: This language leaves no room for doubt. The agreement must expressly specify or "fix" a sum certain or percentage of the payment for child support before any of the payment is excluded from the wife's income. The statutory requirement is strict and carefully worded. It does not say that "a sufficiently clear purpose" on the part of the parties is sufficient to shift the tax. It says that the "written instrument" must "fix" that "portion of the payment" which is to go to the support of the children. Otherwise, the wife must pay the tax on the whole payment. We are obliged to enforce this mandate of the Congress.
Commissioner v. Lester, supra at 303. In *188 applying Lester, we repeatedly have refused to allow inference, intent, or other nonspecific designations of payments as child support to override the clear rule of section 71(b). See Mass v. Commissioner, 81 T.C. 112 (1983); Blakey v. Commissioner, 78 T.C. 963 (1982); Giordano v. Commissioner, 63 T.C. 462 (1975); Talberth v. Commissioner, 47 T.C. 326 (1966); Grummer v. Commissioner, 46 T.C. 674 (1966). In the instant case, the divorce judgment specifically provided in paragraph (e) that petitioner pay Ms. Ray $ 300 per week as child support. In Grummer v. Commissioner, supra, we held that, as long as any portion of the payment is earmarked specifically as child support, the payment cannot be treated as deductible alimony. In the instant case, we hold that the $ 300 payments were earmarked specifically for child support. Petitioners contend that paragraph (g) of the divorce judgment, which states that payments are not required after the death, marriage, or cohabitation of Ms. Ray, but are to be made thereafter only voluntarily as unallocated alimony *189 and child support, creates an ambiguity as to the nature of the $ 300 weekly payment. Respondent contends that paragraph (g) only relates to those payments of "unallocated alimony and support" to be made pursuant to paragraphs (a) through (d), not to the payments to be made pursuant to paragraph (e). We do not find that paragraph (g) creates as much ambiguity as petitioners suggest. While paragraph (g) allows petitioner to voluntarily continue the payments under paragraph (e) if Ms. Ray remarries or begins living with someone, he may only do so if the payments are made "at no cost to" Ms. Ray, which evinces an intent on the part of petitioner and Ms. Ray to continue the payments only if they are considered child support and to discontinue them if they are taxable as alimony to Ms. Ray. Furthermore, petitioner's payments to Ms. Ray under such obligation were to be reduced or eliminated if an emancipation event occurred with respect to their children. Accordingly, we do not view paragraph (g) as showing that the $ 300 payments are intended to constitute alimony. Petitioner relies on a Memorandum Opinion of this Court, Salmon v. Commissioner, T.C. Memo. 1975-126, *190 for the proposition that payments cannot be construed as child support if they are to terminate upon the spouse's death, remarriage, or cohabitation. Petitioner's reliance on Salmon, however, is misplaced. The facts of Salmon are distinguishable from the instant case. In Salmon, the payments were not designated as child support, whereas the divorce judgment in the instant case clearly denominates the $ 300 weekly payment as child support. The fact that the divorce judgment provides that such payments would no longer be required under specified circumstances does not mean that the payments were not "fixed" as required by section 71(a), as interpreted by the Supreme Court in Lester. We do not read section 71 or Lester as requiring payments that are designated as child support to also be unconditional. As the Supreme Court stated in Lester: "The agreement must expressly specify or 'fix' a sum certain or percentage of the payment for child support before any of the payment is excluded from the wife's income". Lester v. Commissioner, 366 U.S. at 303. (Emphasis added.) Consequently, the Supreme Court equated the term "fix" used in *191 section 71 with "specify". Id. at 304. (The Code "affords the husband a deduction for any portion of such payment not specifically earmarked in the agreement as payable for the support of the children.") Accordingly, we hold that the $ 300 weekly payments to Ms. Ray during the year in issue constitute child support that is not includable in Ms. Ray's income and is therefore not deductible to petitioners. The next issue for decision is whether petitioner's 12 monthly payments of $ 537 to Ms. Ray during the year in issue constitute alimony or whether they are part of a property settlement. If the payments are the former, as contended by petitioners, the payments are includable in Ms. Ray's income under section 71 and deductible to petitioners under section 215. If the payments are the latter, as respondent contends, the payments are neither includable in Ms. Ray's income nor deductible to petitioner. Riley v. Commissioner, 649 F.2d 768, 772-773 (10th Cir. 1981), affg. T.C. Memo. 1979-237; Beard v. Commissioner, 77 T.C. 1275, 1290-1291 (1981). The nature of the payments is a question of fact. Riley v. Commissioner, supra at 773; *192 Sydnes v. Commissioner, 68 T.C. 170, 176 (1977), affd. in part, revd. in part on other grounds 577 F.2d 60 (8th Cir. 1978). The labels affixed to payments by the parties or the court having jurisdiction over the divorce proceedings do not control for tax purposes, Steen v. Commissioner, 923 F.2d 603, 606-607 (8th Cir. 1991), affg. T.C. Memo. 1989-542. Rather, the issue is decided on the basis of all surrounding facts and circumstances. Beard v. Commissioner, supra at 1284. Certain circumstances concerning the monthly payments do not affect our conclusion as to whether such payments constituted alimony or a property settlement. First is the fact that, although the payments were equal to Ms. Ray's monthly obligation to the bank, she was not obligated to use the payment for such purpose; rather, she could have spent it for her support. Such freedom, however, does not affect the nature of the payment. Crouser v. Commissioner, 73 T.C. 1113, 1120 (1980), affd. 668 F.2d 239 (6th Cir. 1981), and cases cited therein. The other circumstance that does not *193 affect our conclusion is petitioner's failure, during his bankruptcy proceedings, to obtain a discharge of his obligation to hold Ms. Ray harmless on the practice loan. Petitioners argue that such circumstance shows that the monthly payments were in the nature of alimony because bankruptcy law forbids the discharge of alimony and child support obligations while permitting discharge of debts attributable to property settlements. 11 U.S.C. sec. 523(a)(5) (1988); Matter of Coil, 680 F.2d 1170 (7th Cir. 1982); Rule v. Rule, 612 F.2d 1098 (8th Cir. 1980). The characterization of the monthly payments for Federal income tax purposes, however, is determined under principles of tax law, not bankruptcy law. Considerations unique to bankruptcy law lead bankruptcy courts to take a more expansive view of the definition of alimony than is warranted in the tax field. See In Re Calhoun, 715 F.2d 1103 (6th Cir. 1983). Moreover, under bankruptcy law, any debt not listed in the debtor's petition is excepted from discharge. 11 U.S.C. sec. 523(a)(3) (1988). The record is devoid of any of the details of the bankruptcy proceeding. Consequently, *194 we do not consider the fact that in the instant case the obligation pursuant to which the monthly payments were made was not discharged in petitioner's bankruptcy proceeding. In order to be classified as alimony for Federal tax purposes, section 71(a)(1) requires that payments be periodic and be "received * * * in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband" under a divorce decree or written instrument incident to divorce or separation. Consequently, in order to be alimony, a payment must be in the nature of support rather than in recognition of, and for the extinguishment of, some property interest of the payee spouse. Beard v. Commissioner, supra at 1283; Warnack v. Commissioner, 71 T.C. 541, 550-551 (1979). Several factors have been relied upon by the courts to classify payments as either support or property settlements. Among such factors suggesting that payments are part of a property settlement are: (1) The existence of a fixed sum to be paid over a definite term; (2) that the recipient surrendered valuable property rights in exchange for *195 the payments; (3) that the payments are not subject to contingencies, such as the death or remarriage of the recipient; (4) that the payments are secured; (5) that the payments are not related to the husband's income; (6) that the payments are nonfluctuating, suggesting that the need of the recipient was not taken into account in determining their amount; (7) and that a separate provision for support was provided elsewhere in the decree or agreement. Steen v. Commissioner, 923 F.2d at 607; McCombs v. Commissioner, 397 F.2d 4, 7 (10th Cir. 1968), affg. T.C. Memo. 1967-124; Beard v. Commissioner, supra at 1284-1285; Syndes v. Commissioner, supra at 177; Nathan v. Commissioner, 19 T.C. 865, 872 (1953). The facts of the instant case show that the payments in issue are more closely akin to a property settlement than support. While the modification judgment to which petitioner and Ms. Ray were parties goes to great lengths to characterize the payments as alimony, the terms under which the payments were made belie the label affixed to them. The full amount to be paid by petitioner *196 to Ms. Ray was fixed and readily determinable from the terms of the modification judgment. Petitioner was to continue making the payments regardless of the death or remarriage of Ms. Ray, and regardless of his own financial situation. Indeed, the modification judgment could not be altered upon any event other than petitioner's death. Petitioner was required to execute a wage assignment agreement in favor of Ms. Ray and to maintain life insurance sufficient to pay the remainder of the loan. Furthermore, the modification judgment gave Ms. Ray a claim against petitioner's estate if such insurance was inadequate or not kept in force. Consequently, the provisions of the modification judgment assured that petitioner would furnish the funds needed to pay off the debt. Such circumstances are indicative of a property settlement rather than transfers made on account of an obligation to support the payee spouse. Steen v. Commissioner, 923 F.2d at 607. Petitioner's payments were fixed according to the amount of Ms. Ray's liability to the bank, and, although the modification judgment recites that the payments are made on account of her need for support, we find the *197 amount of the payments specified in the modification judgment were determined on the basis of such liability, rather than upon her financial situation and needs. No change in Ms. Ray's financial circumstances, except those related to her obligation to repay the loan, could affect petitioner's obligation to make the payments. The effect of such change, however, was limited. For, even if Ms. Ray obtained an early discharge of her liability to the bank, the modification judgment provided for a continuation of certain payments called for in such judgment, without regard to petitioner's ability to pay or Ms. Ray's need for support at such time. Ms. Ray exchanged valuable property rights in exchange for the payments, namely, petitioner's undertaking in the original divorce decree to hold her harmless from liability to the bank on account of the practice loan. Significantly, the modification judgment was issued pursuant to an undertaking in the original property settlement made at the time of the divorce.[1] It appears that the payments were made on account of the contractual undertaking in the original decree rather than on account of a "marital or family relationship". Furthermore, *198 the original decree provided for an amount of alimony to be paid to Ms. Ray, suggesting that the monthly payments in issue are of a different character. Although petitioner relies on a Memorandum Opinion of this Court, Harrah v. Commissioner, T.C. Memo. 1982-679, in which the Court found payments to constitute alimony despite the presence of some of the factors listed above, we find such case distinguishable on its facts. Accordingly, based on our consideration of the facts and circumstances of the instant case, we hold that the monthly payments made pursuant to the modification judgment constitute a property settlement, and not alimony. Consequently, the monthly payments are not deductible by petitioners. Our holding as to the nature of the payments *199 renders unnecessary the need to address the parties' arguments concerning whether the payments qualify as "periodic" under the 10-year test of section 71(c)(2) and section 1.71-1(d)(2), Income Tax Regs.
To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. Although the original decree labeled petitioner's hold harmless agreement "lump sum alimony", such characterization does not transform the undertaking into alimony for Federal tax purposes because it does not require periodic payments. Sec. 71(a)↩.