T.C. Memo. 2018-38

UNITED STATES TAX COURT

DERRICK DAVIDSON AND ANGELA DAVIDSON,
Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24619-15.                    Filed April 2, 2018.

Derrick Davidson and Angela Davidson, pro sese.

G. Chad Barton, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  Respondent determined a deficiency in petitioners'

Federal income tax of $5,544 and a section 6662(a) accuracy-related penalty of

[*2] $1,108.80 for tax year 2012.[1] The issues for decision are whether petitioners are: (1) entitled to an alimony deduction of $22,176 and (2) liable for a section 6662(a) accuracy-related penalty.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. We incorporate the stipulation of facts and the attached exhibits by this reference. Derrick Davidson (petitioner) and Angela Davidson resided in Arkansas at the time they filed their petition.

Petitioner is an attorney. Petitioner and Kelley Davidson (Kelley) were married in July 1996. The couple separated in February 2011. In June 2011 the Domestic Relations Division of the Circuit Court of Washington County, Arkansas (circuit court) granted them a divorce. On July 8, 2011, Circuit Judge Joanna Taylor sent the parties a letter stating in part:

> When I made my ruling from the bench last Thursday, I failed to mention the following issues that should be included in the Decree of Divorce:
> 1. The division of debt ordered from the bench shall be considered as support for Mrs. Davidson [Kelley] and shall not be dischargeable in bankruptcy;

---

[1] All section references are to the Internal Revenue Code (Code) in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] On July 29, 2011, the circuit court issued the First Amended Decree to the Divorce Judgment incorporating the terms of the July 8 letter. The amended divorce decree provided, in part, as follows:

> 5. <u>DEBTS</u>: The Court does find that the Defendant [petitioner] is responsible for payment of the parties' joint debts, as well as those debts that are in his sole name. As such, the Court does find for those reasons announced from the bench that the Defendant [petitioner] is responsible for: the Sam's Club credit card debt in the approximate amount of $6,023.53; the Ally Financial debt in the approximate amount of $18,438.87; the Metropolitan Bank debt in the approximate amount of $31,000.00; the debt owed to Jan Davidson in the approximate amount of $5,000.00; the debt and judgment owed to Spiedini Restaurant in the approximate amount of $6,000.00; the GM credit card debt in the approximate amount of $5,262.93; the Bank of America debt on the 1st mortgage in the approximate amount of $209,845.55; the Arvest Bank debt on the 2nd mortgage in the approximate amount of $69,250.00; the Washington County Tax Collector debt in the approximate amount of $514.27; and the debt owed to the IRS for the 2009 income taxes in the amount of $39,000.00. The Defendant [petitioner] shall indemnify the Plaintiff [Kelley] from these debts.
>
> The Court does find for those reasons announced from the bench that the Plaintiff [Kelley] is responsible for the following debts: The debt owed to Banana Republic in the approximate amount of $199.40; the debt owed to the Bank of America in the approximate amount of $400.00; the Arvest Bank debt in the approximate amount of $25,000.00; the other Arvest Bank debt in the approximate amount of $10,375.00 (that her son Tyler is also on that note); the Arvest debt in the approximate amount of $5,214.00. The Plaintiff [Kelley] shall indemnify the Defendant [petitioner] from these debts.

> \*       \*       \*       \*       \*       \*       \*

[*4]          8.     ALIMONY: In light of the foregoing division of the debts, and real and personal property, and having reviewed all the primary and secondary factors of alimony the Court recited, the Court finds that it is not appropriate to award the Plaintiff [Kelley] alimony in this case. Further, given this Court's division of the marital property and debt between the parties and because Mr. Davidson's future income is too speculative to set any kind of time frame on when his income would have to improve for it to inure to the benefit of the Plaintiff [Kelley], the issue of alimony will not be held open to allow Plaintiff [Kelley] to reopen this case and file a petition for alimony in the future.

          9.     BANKRUPTCY: The division of the debt ordered from the bench shall be considered as support for Mrs. Davidson [Kelley] and therefore shall not be dischargeable in bankruptcy.

*          *          *          *          *          *          *

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED by the Court, that the Plaintiff, Kelley Davidson, is entitled to an absolute divorce of and from the Defendant, Derrick Davidson, that the property shall be divided as is delineated herein; and that the issues of debt shall be divided as is delineated herein.

Petitioners hired a certified public accountant (C.P.A.) to prepare their joint 2012 Federal income tax return. On that return petitioners claimed an alimony deduction of $22,176. In determining whether he could claim a deduction for alimony, petitioner relied on advice from his C.P.A. The $22,176 claimed as alimony consisted of petitioner's payment of: (1) $19,500 for one-half of his and Kelley's joint Federal income tax debt for 2009, (2) $2,419 for one-half of their joint credit card debt, and (3) $257 for one-half of their 2011 property taxes.

**[*5]** Kelley did not include any corresponding amount as alimony in her 2012 gross income.

Respondent issued a notice of deficiency in which he disallowed petitioners' alimony deduction and determined that petitioners were liable for a section 6662(a) accuracy-related penalty.

Petitioners timely petitioned this Court.

OPINION

I.      Burden of Proof

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer ordinarily bears the burden of proving those determinations erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Deductions are a matter of legislative grace.  Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  The taxpayer must comply with specific requirements for any deductions claimed.  See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. at 440.  The taxpayer must also maintain adequate records to substantiate the amounts of any credits and deductions.  See sec. 6001; sec.1.6001-1(a), Income Tax Regs.

**[*6]**   Under section 7491(a)(1), the burden of proof may shift from the taxpayer

to the Commissioner if the taxpayer produces credible evidence with respect to

any factual issue relevant to ascertaining the taxpayer's liability and satisfies

certain other requirements.  Higbee v. Commissioner, 116 T.C. 438, 440-441

(2001).  Petitioners have neither alleged nor shown that they satisfied the

requirements of section 7491(a); therefore, the burden of proof remains on

petitioners.

II.    Alimony Deduction

We first address whether petitioners are entitled to the claimed alimony

deduction of $22,176 for the tax year 2012.

A.    Deductible Alimony Payments for Tax Purposes

Section 215(a) and (b) allows a deduction for the payment of alimony as

defined in section 71(b), which provides:

(1) In general.--The term "alimony or separate maintenance
payment" means any payment in cash if--

(A) such payment is received by (or on behalf of) a
spouse under a divorce or separation instrument,

(B) the divorce or separation instrument does not
designate such payment as a payment which is not includible in
gross income under this section and not allowable as a
deduction under section 215,

**[\*7]**            (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

            (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

If a payment satisfies all of these factors, then the payment is alimony; if it fails to satisfy any one of these factors, then it is not. Jaffe v. Commissioner, T.C. Memo. 1999-196, 1999 Tax Ct. Memo LEXIS 234, at \*9. The labels which the parties or a State court attach to payments are not conclusive. Hoover v. Commissioner, 102 F.3d 842, 844-845 (6th Cir. 1996), aff'g T.C. Memo. 1995-183. The test is whether the foregoing requirements are satisfied. Id.

In this case the parties disagree about whether the payments at issue meet the requirements of subparagraph (D); that is, whether petitioner's obligation to pay Kelley's share of their 2009 Federal income tax, joint credit card debt, and property taxes survives her death.

B.    Section 71(b)(1)(D)

Under section 71(b)(1)(D), the payor must have no liability to continue payments after the recipient's death; otherwise the payor may not deduct any

**[\*8]** required related payments.  See <u>Johanson v. Commissioner</u>, 541 F.3d 973, 976-977 (9th Cir. 2008), <u>aff'g</u> T.C. Memo. 2006-105; <u>Kean v. Commissioner</u>, 407 F.3d 186, 191 (3d Cir. 2005), <u>aff'g</u> T.C. Memo. 2003-163.  To determine whether the payor has liability to continue payments after the payee's death, we apply the following sequential approach:  (1) the Court first looks for an unambiguous termination provision in the applicable divorce instrument; (2) if there is no unambiguous termination provision, then the Court looks to whether payments would terminate at the payee's death by operation of State law; and (3) if State law is ambiguous as to the termination of payments upon the death of the payee, the Court will look solely to the divorce instrument to determine whether the payments would terminate at the payee's death.  See <u>Hoover v. Commissioner</u>, 102 F.3d at 846-848; <u>Okerson v. Commissioner</u>, 123 T.C. 258, 264-265 (2004); <u>Stedman v. Commissioner</u>, T.C. Memo. 2008-239, 2008 Tax Ct. Memo LEXIS 234, at \*4.

As described above, petitioner deducted the following:  (1) $19,500 for Kelley's share of their Federal income tax liability for 2009; (2) $2,419 for Kelley's share of a joint credit card balance, and (3) $257 for Kelley's share of their property tax liability for 2011.

**[*9]** Petitioner is jointly and severally liable for the entire amount of his and Kelley's 2009 Federal income tax liability. See sec. 6013(d)(3). Assuming the credit card and property tax liabilities were also joint and several, petitioner would normally be entitled to the right of contribution for Kelley's half of their joint debt. See Cologne v. Commissioner, T.C. Memo. 1999-102. However, in the amended divorce decree, the circuit court divested him of that right. Thus, the question we must decide is whether petitioner's right of contribution would be restored if Kelley died.[2] See id. If it would be restored, then petitioner's obligation to make the payments on Kelley's behalf would terminate upon Kelley's death and the payments at issue would satisfy section 71(b)(1)(D).

In the instant case the divorce decree is silent as to whether petitioner's obligation to pay Kelley's share of the joint marital debt terminates upon her death. Therefore, the Court must look to Arkansas law to make this determination.

C.     Arkansas Law

Arkansas law distinguishes alimony payments, which generally last for a specified period, from property settlement and division of debt payments, which

_____

[2] Another way we have framed this question is whether Kelley's death would transform the payments from those made on her behalf to those made in petitioner's individual capacity. See Zinsmeister v. Commissioner, T.C. Memo. 2000-364, aff'd, 21 F. App'x 529 (8th Cir. 2001). If so, their status as alimony payments under sec. 71(b)(1) would have terminated with Kelly's death. See id.

**[\*10]** generally vest with the divorce decree and survive the death of either former spouse. See Ark. Code Ann. sec. 9-12-312(b), 9-12-315 (2012); Rudder v. Hurst, 337 S.W.3d 565, 572-575 (Ark. Ct. App. 2009); Jones v. Jones, 759 S.W.2d 42, 45 (Ark. Ct. App. 1988). Under the Arkansas statute in effect for 2012, "alimony may be awarded under proper circumstances to either party in fixed installments for a specified period of time subject to the contingencies of the death of either party, the remarriage of the receiving party, or such other contingencies as are set forth in the award".[3] Ark. Code Ann. sec. 9-12-312(b) (2012). In Estate of Carpenter v. Carpenter, 220 S.W.3d 263, 264 (Ark. Ct. App. 2005), the Arkansas Court of Appeals interpreted this provision to mean: "if either party dies or if the payee spouse remarries, the alimony ends." Thus, we conclude that the disputed payments would satisfy section 71(b)(1)(D) if they are alimony under Arkansas law.

In setting the amount of alimony, the Arkansas courts primarily consider the financial needs of one spouse and the other spouse's ability to pay. Brave v. Brave, 433 S.W.3d 227, 233 (Ark. 2014) (citing Kuchmas v. Kuchmas, 243 S.W.3d 270, 271-272 (Ark. 2006)). The Arkansas courts also consider, as

---

[3] Arkansas' alimony statute was amended in 2013. It now provides that "the liability for alimony shall automatically cease upon", among other things, "[t]he death of either party". Ark. Code. Ann. sec. 9-12-312(a)(2)(E) (2017).

**[\*11]** secondary factors, the financial circumstances of both parties, the amount and nature of both current and anticipated income of both parties, the extent and nature of the resources and assets of each party, and the earning ability and capacity of both parties.  Id.

Although no statute provides for the allocation of marital debt, Arkansas courts have the authority to allocate debt in a divorce action.  Baker v. Baker, 429 S.W.3d 389, 394 (Ark. Ct. App. 2013).  In determining the division of marital debt, the trial court is not mandated to divide the debt equally, Williams v. Williams, 108 S.W.3d 629, 638 (Ark. Ct. App. 2003), and it must apportion the debt in an equitable manner, Burns v. Burns, 2012 Ark. App. LEXIS 655, at \*9-\*10 (Sept. 26, 2012).  The allocation must be considered in the context of the distribution of all of the parties' property.  Boxley v. Boxley, 73 S.W.3d 19, 23 (Ark. Ct. App. 2002).  The effect of an allocation of debt on the spouse's lifestyle and the relative abilities of the parties to pay the debt are valid considerations in allocating the marital debt.  Ellis v. Ellis, 57 S.W.3d 220, 223 (Ark. Ct. App. 2001).

Petitioner has not shown that the payments at issue are alimony under Arkansas law or otherwise terminable at Kelley's death.  For one, Arkansas law distinguishes alimony from debt allocations; the latter are generally considered

[*12] property settlements rather than alimony payments.  See Ark. Code Ann. sec. 9-12-312(b), 9-12-315; Rudder v. Hurst, 337 S.W.3d at 572-575; see also Kelly v. Kelly, 381 S.W.3d 817, 824 (Ark. 2011) (stating that trial courts must consider the debts of divorcing parties in deciding questions of alimony).  Second, petitioner has not shown that the allocation of his and Kelley's marital debt was based on the primary and secondary factors considered for an alimony award.  In fact, in the alimony section of the amended divorce decree, the circuit court referenced the alimony factors and stated that an alimony award was not appropriate.[4]  Accordingly, because petitioner failed to establish that his obligation to pay Kelley's share of their joint debts (without the right of contribution) would terminate upon her death, he has not satisfied section 71(b)(1)(D).[5]

---

[4] To the extent there are any questions about alimony's automatic termination at death under Arkansas law in 2012, see supra note 3, the amended divorce decree's wording does not otherwise suggest that the marital debt allocation would terminate upon Kelly's death.

[5] Petitioner relies on the circuit court's characterization of the debts as "support for Mrs. Davidson * * * not dischargeable in bankruptcy" to argue that his debt payments qualify as alimony under sec. 71.  He contends that, if marital debt obligations are alimony under Federal bankruptcy law, they must also qualify as alimony under the Code.  Petitioner's reliance on the "support" language in the amended divorce decree is misplaced.  The circuit court statement regarding bankruptcy does not control the outcome in this case.  See Hoover v. Commissioner, 102 F.3d 842, 847-848 (6th Cir. 1996), aff'g T.C. Memo. 1995-183.  Furthermore, the character of the payments for Federal income tax purposes

(continued...)

**[*13]** We will therefore sustain respondent's determination as to the deficiency.

III.     Section 6662(a) Accuracy-Related Penalty

We next address the accuracy-related penalty under section 6662(a) determined in the notice.

Section 6662(a) and (b)(1) and (2) imposes a penalty equal to 20% of any portion of an underpayment that is attributable to negligence or disregard of rules or regulations or to any substantial understatement of income tax. Section 6662(d)(1)(A) defines a substantial understatement as an understatement that exceeds the greater of 10% of the tax required to be shown on the return for the taxable year or $5,000. Section 6662(d)(2)(A) defines "understatement" as the excess of the amount of tax required to be shown on the return for the taxable year over the amount of tax imposed which is shown on the return, reduced by any rebate.

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if it is shown that there was reasonable cause for, and

---

[5](...continued)
is determined under principles of tax law, not bankruptcy law. Walstatter v. Commissioner, T.C. Memo. 1992-152, 1992 Tax Ct. Memo LEXIS 170, at *24; see also Arnett v. Commissioner, 126 T.C. 89, 95 (2006) (holding that Antarctica is not a "foreign country" under sec. 911 even though it is a "foreign country" for purposes of the Federal Tort Claims Act).

[*14] that the taxpayer acted in good faith with respect to, that portion. Sec. 6664(c)(1). The determination of whether the taxpayer acted with reasonable cause and in good faith depends on all the pertinent facts and circumstances, including the taxpayer's efforts to assess the proper tax liability, the knowledge and experience of the taxpayer, and reliance on the advice of a professional, such as an accountant. Sec. 1.6664-4(b)(1), Income Tax Regs.

Reliance upon the advice of a tax professional may, but does not necessarily, establish reasonable cause and good faith for the purpose of avoiding a section 6662(a) penalty. See United States v. Boyle, 469 U.S. 241, 251 (1985). Such reliance does not serve as an "absolute defense"; it is merely "a factor to be considered". Freytag v. Commissioner, 89 T.C. 849, 888 (1987), aff'd, 904 F.2d 1011 (5th Cir. 1990), aff'd, 501 U.S. 868 (1991). The caselaw sets forth the following three requirements in order for a taxpayer to use reliance on a tax professional to avoid liability for a section 6662(a) penalty: "(1) [t]he adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgments." See Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

[*15] The Commissioner bears the burden of production with respect to any accuracy-related penalty under section 6662(a) determined in the notice. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. at 446-447. To satisfy the burden of production, the Commissioner must come forward with "sufficient evidence indicating that it is appropriate to impose" the penalty. See Higbee v. Commissioner, 116 T.C. at 446. The Commissioner's burden of production under section 7491(c) includes establishing compliance with the supervisory approval requirement of section 6751(b).[6] Graev v. Commissioner, 149 T.C. ___, ___ (slip op. at 14) (Dec. 20, 2017), supplementing and overruling in part Graev v. Commissioner, 147 T.C. ___ (Nov. 30, 2016); see also Chai v. Commissioner, 851 F.3d 190, 222 (2d Cir. 2017) (citing Higbee v. Commissioner, 116 T.C. at 446). Although he bears the burden of production with respect to the accuracy-related penalty under section 6662(a), the Commissioner "need not introduce evidence regarding reasonable cause, substantial authority, or similar provisions. * * * [T]he taxpayer bears the burden of proof with regard to those issues." Higbee v. Commissioner, 116 T.C. at 446.

---

[6] Sec. 6751(b) requires written supervisory approval of the initial determination of certain penalties.

[*16] Assuming (without finding) that respondent has met his burden of production in the instant case, we nevertheless conclude that petitioners have carried their burden with respect to reasonable cause and good faith.[7]

Petitioners relied on a C.P.A. to prepare their 2012 tax return. We accept petitioner's credible testimony that he accurately provided all the information concerning the alimony deduction to his C.P.A. Accordingly, petitioners established that they reasonably believed their C.P.A. was a competent tax adviser, that they provided him with adequate information, and that their reliance on their C.P.A. was in good faith. It is also noteworthy that petitioners relied on the statement in the amended divorce decree that "[t]he division of debt ordered from the bench shall be considered as support for Mrs. Davidson and shall not be dischargeable in bankruptcy" to mean that the unequal division of marital debt constituted alimony. Finally, we note the complexity of the law governing the alimony deduction.[8]

---

[7] Because we hold that petitioners acted in good faith and with reasonable cause, we need not decide whether respondent carried his burden of production under sec. 7491(c).

[8] Petitioner is an attorney, but he does not practice tax law. See Bursten v. United States, 395 F.2d 976, 981 (5th Cir. 1968) ("We must note here, as a matter of judicial knowledge, most lawyers have only scant knowledge of the tax laws.").

**[*17]** In sum, having considered all the facts and circumstances, we are satisfied that petitioners acted in good faith and with reasonable cause under section 6664(c)(1).  Therefore, we hold that petitioners are not liable for the accuracy-related penalty under section 6662(a).

In reaching all of our holdings herein, we have considered all arguments made by the parties, and to the extent not mentioned above, we conclude they are irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u> <u>respondent as to the deficiency and for</u> <u>petitioners as to the accuracy-related penalty</u> <u>under section 6662(a)</u>.